**Timothy J. TURNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 21A04–9702–CR–76.

Court of Appeals of Indiana.

Sept. 4, 1997.

Transfer Denied Nov. 5, 1997.

Michael Gene Worden, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Timothy Turner appeals his conviction in a bench trial of attempted murder.[1] We affirm.

### ISSUE

Whether the prosecutor suppressed specifically requested, possibly exculpatory material evidence.

### FACTS

On April 3, 1995, 39 year-old Timothy Turner was charged with the attempted murder of 42 year-old Rick Brock. Before trial, Turner's counsel filed a discovery motion wherein he requested, among other things, the "results of any blood alcohol tests ordered by the Police Department ordered upon the defendant herein." (R. 14). Further, throughout the pre-trial discovery process, Turner's counsel asked the prosecutor, his deputy, and Connersville Police Department Detective William Cox whether any blood alcohol tests had been performed upon Turner. Counsel was advised that no such tests had been performed.

At trial, the State presented evidence that on March 31, 1995, Timothy Turner and Mike Narvell spent the evening drinking beer and smoking marijuana. At approximately 11:30 p.m., Turner and Narvell drove to Dave Brock's house to discuss a dispute over the sale of a gun. Turner, who had brought his loaded .357 magnum with him, parked his truck on the street in front of Dave's house and went to the front door. Narvell waited in the truck and subsequently passed out on the front seat.

Turner knocked at Dave's front door, and Angie Wray, the daughter of Dave's girlfriend, answered the door. According to Wray, Turner was "very drunk." (R. 232). Specifically, Turner was "stuttering, and he couldn't really stand up very well." (R. 232).

Turner asked Wray whether Dave was at home. Wray responded that he was not, and shut the door. Turner began pounding on the door and yelling.

Dave's brother, Rick, happened to be driving by Dave's house when he noticed Turner standing on the front porch "acting crazy."[2] (R. 310). Rick stopped his car next to the curb, and Turner saw him and walked toward his car. As Turner approached Rick's car, Rick noticed that Turner had a gun tucked in the front of his pants. The men exchanged greetings, and Rick opened the door slightly to spit out his chewing tobacco. As Rick was about to close the car door, Turner said, "I think I'll blow you fucking head off." (R. 317). Rick felt the barrel of Turner's gun on his chest, and Turner pulled the trigger. Rick immediately drove to Fayette County Hospital, walked into the emergency room, told the hospital staff that he had been shot, and fainted. He subsequently told police officers that Turner had shot him.

The gunshot awakened Narvell, who had passed out in Turner's truck. Turner got into the truck, turned on the radio and drove away. The two men went to a friend's house where Turner was arrested by Detective Cox in the early morning hours of April 1, 1995. Turner was intoxicated at the time of his arrest. Specifically, Detective Cox testified that he "would have arrested [Turner] for being intoxicated if it had been a different situation. He was at least that intoxicated." (R. 370). Detective Cox did not perform any blood alcohol or breathalyzer tests on Turner because Turner "invoked his Constitutional privileges of an attorney." (R. 410). Connersville Police Department Lieutenant David Councellor, an officer assigned to investigate the case, transported Turner from the scene of his arrest to the Fayette County jail.

During the defense's presentation of evidence, Turner testified that he was "pretty well intoxicated" (R. 441) on the night of

---

1. Ind.Code 35–41–5–1; Ind.Code 35–42–1–1.

2. Rick had known Turner for 30 years.

March 31, 1995, and that the shooting was an accident. According to Turner, while he and Rick were talking and laughing, Turner told Rick to be careful because he had a loaded gun in his pocket. Rick grabbed Turner's arm and jerked it, and then Rick drove away. Turner got back into his truck and drove to a friend's house. He did not realize that Rick had been shot until he was arrested later that night. Turner surmised that the loaded gun in his coat pocket must have "went off" and injured Rick. (R. 216).

At the conclusion of the bench trial, the court stated as follows:

> Mr. Turner, ... you indicated that you weighed 160 pounds back then, and assuming, and we'll say this occurred at midnight, and you started drinking at 6 o'clock, or 5 o'clock, assuming you drank your 12 beers ... and you also smoked a joint, and we'll forget about the joint, but if you quit smoking at 6 o'clock in the evening, 6 hours later you would still had a, according to ... [the] blood alcohol content awareness calculator that I have.... You would have had a blood alcohol content based upon that weight and 12 beers.... You would have had a blood alcohol of probably ... point 18, point 19, almost two times the legal limit. That tells me that I doubt if you remember very well what went on.... You've given me a story that's partially believable, and partially not believable. Mr. Brock has given us this story that has inconsistencies in it. So I'll just take my time, and I'll wait until I get the briefs or memorandums from the attorneys before I make my final decision as I mull that over. What I'll do is I'll enter [a] written order indicating that I find him guilty or not guilty....

(R. 503–05).

Before the trial court had entered its order, Turner discovered that blood alcohol test results existed, and filed a motion to correct errors requesting a new trial. The motion provides in pertinent part as follows:

> 8. That following the trial hereof, August 19, 1996, upon suspicion raised by the fact that the testimony of William Cox on an unrelated matter differed from comments made to undersigned counsel earlier, undersigned counsel went to the Fayette County Memorial Hospital where he obtained from medical records written evidence that the defendant, at the request of law enforcement, did in fact undergo blood testing after his arrest on April 1, 1995, revealing the defendant to have a blood alcohol content at approximately 2:48 a.m. of 200 mg/dl.

(R. 114–15).

The trial court held a hearing on the motion wherein the evidence revealed that the Fayette County jail has an administrative policy wherein all prisoners who appear to be intoxicated are required to take an alco-sensor test at the jail. If the prisoner's blood alcohol content is more than .25, the prisoner must be transported to the Fayette County hospital and be seen by a physician before the jail will accept him. Turner arrived at the jail in the early morning hours of April 1, 1995. At that time, Lieutenant Councellor administered an alco-sensor to Turner. Thereafter, Councellor transported Turner to the hospital for a blood alcohol test. Turner was subsequently returned to the jail.

The evidence further revealed that one of the documents provided to Turner during pre-trial discovery was a Connersville Police Department "Main Radio Table Log," (R. 519), concerning the Turner case. The log provides in pertinent part as follows:

| Time and Date | Unit | Code | Zone | Agnc | Description |
| --- | --- | --- | --- | --- | --- |
| 02:31:41 04/01/95 | 2165 | 7 | D3 | CPD | FMH |
| 02:28:47 04/01/95 | 2165 | ENRT | D3 | CPD | FMH ref blood test call=21 |

(R. 519). In addition, Turner testified that he remembered being transported to the hospital for a blood alcohol test after his arrest. The trial court denied Turner's motion and found him guilty of attempted murder.

## DECISION

Turner contends that he was denied his "right to due process under the Fourteenth Amendment to the United States Constitution by the State's failure to disclose specifically requested material exculpatory evidence to the defense." Turner's Brief, p. 8. The evidence to which Turner refers is the hospital blood test results. Turner's contention is without merit.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court stated that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. The Seventh Circuit Court of Appeals has stated that to show a *Brady* violation, the defendant must establish 1) that the prosecutor suppressed evidence; 2) that such evidence was favorable to the defense; and 3) that the suppressed evidence was material. *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir.1996). The prosecutor in this case was unaware of the existence of the blood test results. However, because Lieutenant Councellor was aware of their existence, the prosecutor is charged with knowledge of them as well. *See, Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995)("[T]he individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.").

The Seventh Circuit Court of Appeals has consistently emphasized that the government will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996), and cases cited therein. Here, during pre-trial discovery, the State provided Turner with a police log concerning Turner's case. The log de-

scribes a "blood test call." (R. 519). Further, the name of Lieutenant Councellor, the investigating officer who administered the alco-sensor to Turner and transported him to the hospital for the blood alcohol test, was listed on the charging information. Lastly, at the hearing on the motion to correct errors, Turner testified that he remembered being transported to the hospital for a blood alcohol test after his arrest. Based on the foregoing, we conclude that the blood alcohol test results were available to Turner through the exercise of due diligence. Therefore, we cannot say that the prosecutor in this case suppressed the results. *See, Morris.* However, by our ruling herein, we do not intend to diminish the fact that a prosecutor has an absolute duty to conduct an investigation or make reasonable inquiry regarding a defendant's request for discovery before responding thereto.

Further, even if the prosecutor had suppressed the blood test results, Turner has failed to show that the results were material evidence. Evidence is "'material'" only if there is a "'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *State v. Lopez*, 676 N.E.2d 1063, 1067 (Ind.Ct.App.1997), *trans. denied*, (quoting *United States v. Bagley*, 473 U.S. 667, 685, 105 S.Ct. 3375, 3385, 87 L.Ed.2d 481 (1985)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566. "A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of trial.'" *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381).

Here, numerous witnesses testified that Turner was intoxicated at the time of the shooting. For example, Angela Wray testified that Turner was "very drunk." (R. 232). According to Wray, Turner was "stuttering, and he couldn't really stand up very well." (R. 232). Rick Brock testified that he "could tell that Turner was really intoxicated," (R. 317), and Detective Cox would have

arrested Turner for being intoxicated if it had been a different situation. (R. 370). Turner testified that he had drunk 12 beers in seven hours, and was "pretty well intoxicated." (R. 441). Based on the foregoing, the trial court had before it overwhelming evidence that Turner was intoxicated at the time of the shooting.

Further, at the conclusion of trial, the court estimated that, based upon Turner's weight and the amount of alcohol that he consumed on the evening of March 31, 1995, Turner's blood alcohol content was probably "point 18, point 19, almost two times the legal limit." (R. 504). The trial court further concluded that Turner probably did not remember very well what went on.

Based on the foregoing, and because of the trial court's in-depth analysis of the facts and evidence on the record in support of his decision, we cannot say that there is a reasonable probability that if the blood alcohol test results had been disclosed to the defense, the result of the proceeding would have been different. Therefore, the results in this case were not material evidence, and we find no error herein.

Affirmed.

RILEY and GARRARD, JJ., concur.