**Brian L. DENNEY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 27S00–9701–CR–47.

Supreme Court of Indiana.

May 1, 1998.

**92**

Jerry T. Drook, Kenneth D. Kauffman, Marion, for Appellant.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

A jury convicted Brian L. Denney of murder. The trial court imposed a sentence of sixty-five years. In this direct appeal, Denney presents two issues for our review that we restate as follows:

I.  Did the trial court err in denying Denney's motion for a new trial based on blood test results first available after trial indicating that LSD was "present" in Denney's blood sixteen days after the crime?

II. Were Denney's due process rights violated when the State failed to report, in response to a general discovery request, that the blood sample had been taken?

We affirm.

**Factual and Procedural History**

There is no dispute that on November 14, 1995, Denney shot and killed his roommate, John Coolman. Denney's defense was that he was so intoxicated that he could not have knowingly shot Coolman.

Denney's girlfriend, Michelle Beekman, testified that at about 7:00 p.m. on the evening prior to the early morning shooting, Denney and Coolman had taken her to the club where she worked as an exotic dancer. Beekman testified that on the way Denney, Coolman, and Beekman smoked a "couple" of "joints." Denney and Coolman remained at the club for approximately three to four hours and drank an unknown quantity of beer. Beekman also testified that Denney took a "hit of acid" (LSD) at the club. At approximately 3:45 a.m., Denney and Coolman returned to the apartment they shared with Denney's cousin. When Beekman arrived at the apartment after work at about 4:30 a.m., she found Denney and Coolman watching television in the living room. Denney became first verbally, then physically, abusive of Beekman. A brawl broke out when Coolman interceded after Denney prevented Beekman from leaving the apartment. Ultimately, after telling Coolman to mind his own business and threatening to kill Coolman, Denney fatally shot Coolman in the

head at close range. Denney and Beekman fled the apartment. Denney was arrested the next morning.

On November 30, 1995, sixteen days after the shooting, a blood sample was taken from Denney pursuant to a court order. The results of the test, which showed that LSD was "present" in Denney's blood without further explanation, were not returned to the State until after the trial, which occurred in September 1996. After conviction, the trial court denied Denney's motion for a new trial based on the blood test results. We have jurisdiction of Denney's appeal under Indiana Appellate Rule 4(A)(7).

## I. The Blood Test As Newly Discovered Evidence

Denney contends that the results of the blood test constituted newly discovered evidence warranting a new trial. Denials of a motion for a new trial are reviewed for an abuse of discretion. *Dowler v. State*, 547 N.E.2d 1069, 1072 (Ind.1989).

Under Trial Rule 59(A), to warrant a new trial based on newly discovered evidence, the movant must show that the evidence (1) has been discovered since the trial; (2) is material and relevant; (3) is not cumulative; (4) is not merely impeaching; (5) is not privileged or incompetent; (6) was not discoverable upon due diligence in time for trial; (7) is worthy of credit; (8) can be produced on a retrial of the case; and (9) will probably produce a different result. *Bustamante v. State*, 557 N.E.2d 1313, 1324 (Ind. 1990). Motions for a new trial based upon newly discovered evidence are viewed with disfavor. *Helton v. State*, 273 Ind. 211, 216, 402 N.E.2d 1263, 1267 (1980). The movant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Bradford v. State*, 675 N.E.2d 296, 302 (Ind.1996). Denney's argu-

ment for a new trial based on the blood test results fails to satisfy at least two of these requirements. Specifically, Denney has failed to carry his burden that the newly discovered evidence would probably change the trial outcome. He has also failed to show that due diligence was exercised in discovering it.

### A. *Probability of changing the outcome*

In order for newly discovered evidence to warrant a new trial, it must raise a strong presumption that, in all probability, it would produce a different result upon a new trial. *Nunn v. State*, 601 N.E.2d 334, 337 (Ind.1992). In this case, the blood sample, upon which the laboratory report is based, was taken from Denney sixteen days after the murder was committed. Although the test results indicated that LSD was "present" in his blood at that point, there was ample opportunity for Denney to use LSD after the shooting and before the blood sample was taken. Aside from the possibility of ingestion while in custody, he was first arrested more than twenty-four hours after the shooting. Further, Denney does not attempt to establish what the test showed as to his level of intoxication even if it is assumed that the test sixteen days later was the result of a substance taken before the crime. For both reasons, Denney fails to establish that the laboratory report would probably have changed the trial outcome.[1]

### B. *Due diligence*

Denney's claim fails for a second reason: he failed to exercise due diligence to discover the evidence. "Motions for a new trial based on newly discovered evidence are subject to a hostile inference of want of due diligence in the absence of a clear showing to the contrary." *Tyson v. State*, 626 N.E.2d

---

1. Both Beekman and Denney testified to Denney's use of LSD on the night of the shooting. For that reason, the State contends the test is merely cumulative. This would present a third ground for upholding the denial of Denney's motion. However, the State's argument assumes the test showed traces from ingestion that affected Denney at the time of the shooting. Without expert testimony or some other showing as to the significance of LSD being "present" after that time interval, it is impossible to assess that issue. The test results indicated that "[c]onfirmatory testing was not performed but is available on request." Although it is unclear what "confirmatory testing" would have shown here, there is no indication that Denney pursued that option. In any event, the burden is on the proponent of new evidence to establish its significance and Denney makes no showing in that respect.

482, 485 (Ind.Ct.App.1993) (citation and internal quotation marks and brackets omitted). "A finding of due diligence does not rest upon abstract conclusions about, or assertions of, its exercise but upon a particularized showing that all the methods of discovery reasonably available to counsel were used and could not uncover the newly-found information." *Id.* (citations and internal quotation marks omitted). Moreover, a defendant in possession of evidence who fails to present it at trial cannot use the evidence as a basis for a new trial following an unfavorable verdict. *Dean v. State*, 433 N.E.2d 1172, 1181 (Ind.1982), *supplemented*, 441 N.E.2d 457. Denney falls woefully short of this high standard.

■■■ Denney argues that his pretrial request for discovery constituted due diligence. His discovery motion requested "[t]rue, accurate and complete copies of any scientific ... blood ... or other laboratory reports ... notes, memorandum or other tangible documents which are known to exist, regardless of whether they are in the custody of the State of Indiana...." This paragraph requests information related to the investigation and prosecution of the case against Denney. However, at no time prior to or during trial did the State have the results of the blood analysis to disclose. Not until four days after the trial concluded was the State aware of the results of the tests. At that time, the State forwarded the results to Denney's counsel.

We do not suggest that the State may fail to advise a defendant of the existence of laboratory tests and similar information properly requested through discovery simply because the results have not been received from the laboratory. But knowledge of the existence of the blood test is not at issue here. On November 28, 1995, the trial court, on motion of the State, ordered the taking of a blood sample from Denney. On November 30, 1995, when the blood sample was taken, Denney, of course, knew this was occurring. If Denney wished to use the blood test offensively, as opposed to simply being aware of it for whatever use the State might choose to make of it, it was up to Denney to pursue the laboratory results. Even though he knew he did not have the results, Denney did not initiate his own blood analysis or request the State to expedite its test results or cite their absence as a ground for continuance. Denney offers nothing to rebut the obvious inference that he had reasonable means available to obtain results of the sample which was known to have been taken, but failed to exercise due diligence.

## II. Claim of Suppression of Evidence

■■■ *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) established that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985). In proving materiality, it is not necessary for the defendant to show that "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles v. Whitley*, 514 U.S. 419, 434–35, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). Rather, the defendant must show only that the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435, 115 S.Ct. at 1566 (footnote omitted).

■■■ To establish a *Brady* violation, Denney must show that the State suppressed material evidence that was favorable to his defense. *State v. Nikolaenko*, 687 N.E.2d 581, 583 (Ind.Ct.App.1997). In this case, even if we assume the evidence is material and favorable to Denney, he has not shown that the State "suppressed" the evidence within the meaning of *Brady*. Because the State did not receive the report until after the trial, Denney does not contend that the laboratory report was suppressed. Rather, he contends that the State suppressed the fact that the testing was being done and that

a report was forthcoming. A *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information. *Johnson v. State*, 1998 WL 100378, at *3 (Ind. Mar.9, 1998) (citing *United States v. White*, 970 F.2d 328, 337 (7th Cir.1992)), *petition for reh'g filed*. The State does not have a duty to disclose evidence that the defendant knew or should have known existed. *Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind.1990). In this case, Denney had actual knowledge that blood was taken from him. Because the test was court ordered, it was a matter of record. Under these circumstances, there is no obligation on the State to do anything other than turn the report over to Denney when it became available. *Cf. Turner v. State*, 684 N.E.2d 564 (Ind.Ct.App. 1997) (no *Brady* violation where defendant knew that blood-alcohol test had been taken but failed to exercise due diligence or demonstrate how the results would have changed the trial outcome), *trans. denied*, 690 N.E.2d 1187 (Ind.1997) (table).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.