Richard Calvin WILLIAMS, Jr.,
Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A03–9807–PC–299.

Court of Appeals of Indiana.

Aug. 10, 1999.

Stephen Bower, Cohen and Thiros, Merrillville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

### Case Summary

Appellant–Petitioner, Richard Calvin Williams ("Williams"), appeals the post-conviction court's denial of his petition for relief. We affirm.

### Issues

Williams raises two issue for our review which we restate as three:

I. Whether the post-conviction court erred when it ruled that the doctrine of res judicata barred his claim that the trial court's instruction on Attempted Murder at his trial constituted fundamental error and that even if the doctrine of res judicata did not bar his claim, the instruction did not constitute fundamental error;

II. Whether he presented the post-conviction court with newly discovered evidence warranting a new trial; and

III. Whether he was denied effective assistance of trial counsel.

*Facts and Procedural History* [1]

The facts most favorable to the judgment show that:

[O]n February 17, 1991, Williams was driving a red Geo Tracker in Hammond, Indiana. Williams was accompanied by his brother-in-law, Albert Gaines, and a minor, David Allen. Williams encountered a pickup truck driven by Scott Spotten, the victim. Spotten swerved in front of the Geo and called out a racial slur.

Williams turned the Geo around and pursued Spotten's truck. Both vehicles stopped side-by-side at a traffic signal. Williams told Allen, the back-seat passenger, to "give me my gauge." Williams was referring to a 12–gauge pump shotgun which he kept in the Geo. Allen took out the gun and said, "I'll do it." As the vehicles drove away, Williams drove parallel to Spotten's truck. Allen fired one shot which hit the side of the truck. Allen then pumped the gun and shot again. The second shot struck Spotten on the right side. Spotten, who was seriously injured, lost control of his truck. The truck struck a parked car and careened into the house.

Williams quickly drove away from the scene to his home in Gary, Indiana. Williams parked the Geo in the garage. Then, Williams switched the convertible top from black to white.

Believing that only Allen, who actually shot the gun would be charged, Gaines told police about the incident the next day. Williams was charged with attempted murder. After a trial by jury, Williams was convicted as noted above.

*Williams v. State*, No. 45A03–9210–CR–328, slip op. at 2–3, 615 N.E.2d 514 (Ind.Ct.App. June 17, 1993).

*Discussion and Decision*

*I.*

Williams argues that the post conviction court erred when it ruled that 1) the doctrine of res judicata barred him from challenging the trial court's instruction on attempted murder and 2) the attempted murder instruc-

tion in question was not fundamentally erroneous. We disagree.

 In his petition for post conviction relief, Williams had to prove by a preponderance of the evidence that he was entitled to the relief he sought. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993), *criticized on other grounds by Seay v. State*, 698 N.E.2d 732, 737 n. 8 (Ind.1998). The post conviction court has the sole authority to weigh the evidence and determine the credibility of witnesses. Upon review of its decision, this court will only consider the evidence supporting the judgment and all reasonable inferences to be drawn therefrom. *Id.* For Williams to prevail on this appeal, he must show that "the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court." *Id.*

### A. The Doctrines of Res Judicata and 'Law of the Case'

In Williams' direct appeal, he argued that the instruction on attempted murder submitted to the jury by the trial judge was erroneous. In a memorandum opinion, this court rejected Williams' contention in this regard and concluded that the instruction was proper. Williams asks this court to revisit this determination. The State counters and the post conviction court concluded that the doctrine of *res judicata* should bar Williams from raising this issue on appeal.

 Generally, this court adheres to a policy to not allow a defendant to raise on collateral appeal an issue already decided by this court on direct appeal. Although the post conviction court, Williams, and the State refer to this policy as the doctrine of *res judicata*, we believe the doctrine is more accurately denominated the 'law of the case.' In *State v. Huffman*, 643 N.E.2d 899 (Ind. 1994), our supreme court used the terms 'res judicata' and 'law of the case' interchangeably, *id.* at 901; however, in *State v. Lewis*, our supreme court also noted that the two doctrines are distinct. That court stated:

---

1. On its own motion, this court directed its clerk to supplement the record with the record of Williams' direct appeal. The original record will be cited as "(R. __)" whereas the supplemental record will be cited as "(S.R. __)."

In 1922, the United States Supreme Court stated that "there is a difference between [adherence to the law of the case] and res judicata; one directs discretion, the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." More recently, that Court stated that

> the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.' A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'

543 N.E.2d 1116, 1118 (Ind.1989) (citations omitted), *quoting Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816–818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811, 831 (1988). The doctrine of *res judicata*, on the other hand, "provides that a judgment on the merits is an absolute bar to a *subsequent action* between the same parties on the same claim." *Mutchman v. Consolidation Coal Co.*, 666 N.E.2d 461, 464 (Ind.Ct.App.1996), *trans. denied*, (emphasis added).

The doctrines are deceivingly similar and often confused. In *Williams v. Williams*, for example, this court held that the plaintiff's claim was barred by the 'law of the case' doctrine. 427 N.E.2d 727, 731 (Ind.Ct.App. 1981), *reh'g granted.* On rehearing, this court noted that when an issue has been previously determined by a court, the 'law of the case' doctrine operates to bar reconsideration of that issue only in a subsequent proceeding in the same action. *See Williams v. Williams*, 432 N.E.2d 417, 418 (Ind.Ct.App. 1982). Because the plaintiff's claim had already been litigated in a separate action, the *Williams* court amended its original opinion to hold that the plaintiff's claim was actually barred by the doctrine of *res judicata.* *Id.*

In the present case, Williams is asking this court to revisit a prior decision of its own in a collateral appeal of that decision. He is not asking to relitigate an issue already decided in a separate action. Accordingly, we believe that the relevant inquiry involves the 'law of the case' doctrine, and therefore, we will direct our analysis thereto.

■ Specifically, the 'law of the case' doctrine mandates that when an appellate court decides a legal issue, both the trial court and the court on appeal are bound by that determination in any subsequent appeal involving the same case and relevantly similar facts. *Huffman*, 643 N.E.2d at 901; *see also Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind.1985), *cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985). The doctrine's important purpose is to minimize unnecessary relitigation of the legal issues once they have been resolved by an appellate court. *Huffman*, 643 N.E.2d at 901. As Williams properly notes, however, there is a very narrow exception to the 'law of the case' doctrine. This exception was explicated by our supreme court in *Huffman:*

> With due respect for the doctrine of res judicata [2] this Court has always maintained the option of reconsidering earlier cases in order to correct error. "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work manifest injustice.'" Finality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter.

*Id.* (citations omitted). To the extent Williams argues that this court's memorandum decision was erroneous, we agree; however, we do not believe this court's error rises to the level of fundamental error, much less error justifying this court to disregard its previous determination. For reasons discussed hereinafter, we conclude that the rationale behind this court's determination of Williams' challenge to his attempted murder instruction is erroneous, but we also conclude that had this court employed a proper analy-

2. *See supra*, pp. 885–886.

sis of his claim, the outcome of his direct appeal would have been the same.

### B. Attempted Murder Instructions and Fundamental Error

■ A defendant is entitled to have the jury instructed correctly on an essential rule of law. *Hill v. State,* 615 N.E.2d 97, 99 (Ind.1993). An erroneous instruction will not warrant reversal unless it is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Id.* Attempted murder is a specific intent crime and the jury must be so instructed. *Id.* Although a person may be convicted of murder upon proof that he acted "knowingly," he may not be convicted of attempted murder without proof that he acted with the intent to kill. *Id.*

The attempted murder instruction given at Williams' trial, instruction number two (2), read as follows:

> A person who knowingly or intentionally kills another human being commits murder, a felony. A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit murder is a Class A felony.
>
> To convict the defendant of the crime of attempted murder, the State must have proved the following elements:
>
> 1. The defendant knowingly or intentionally
> 2. took a substantial step to accomplish
> 3. a knowing or intentional killing of Scott Spotten.

(S.R. 52). Instruction number three (3) contained the definitions of "intentionally" and "knowingly:"

> A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. If a person is charged with intentionally causing a result by his conduct, it must have been his purpose not only to engage in the conduct, but also to cause the result.
>
> A person engages in the conduct "knowingly" if, when he engages in the conduct,

he is aware of a high probability that he is doing so. If a person is charged with knowingly causing a result by his conduct, he must have known not only what he was doing but also have known or firmly believed that his conduct would cause the result.

(S.R. 53).

■ We conclude that instruction number two is erroneous because it failed to instruct the jury that in order to convict Williams of attempted murder it had to find that Williams had the 'specific intent to kill the victim. Thus, this court erred when it declared, "[t]he instruction required that Williams possess the specific intent to kill Spotten." *Williams,* slip. op. at 5.

Although this court erred in this determination, Williams is not *ipso facto* entitled to the relief he seeks. As indicated above, he must establish that this error is clearly erroneous and "would work manifest injustice." *See Huffman,* 643 N.E.2d at 901. Because Williams did not object to the above instruction at his trial, he should have prevailed on direct appeal only if he established that the trial court committed fundamental error when it issued its instruction. Accordingly, in order to determine whether we should disregard the 'law of the case' doctrine and overturn this court's previous decision, we shall focus our analysis on whether the trial court's erroneous instruction and this court's subsequent approval thereof constitutes fundamental error. We do so because we find it difficult to imagine an instruction which constitutes "clear error" working "manifest injustice" which does not simultaneously constitute fundamental error. *Compare Huffman,* 643 N.E.2d at 901 (holding that an error is clear error where it would work manifest injustice) *with Utley v. State,* 699 N.E.2d 723, 730 (Ind.Ct.App.1998), *trans. denied,* (holding that fundamental error must be of such magnitude to persuade the reviewing court that the defendant could not possibly have received a fair trial or that the verdict is clearly wrong or of such dubious validity that justice cannot permit it to stand).

 Not every erroneous attempted murder instruction constitutes fundamental error. *Goudy v. State,* 689 N.E.2d 686, 697 (Ind.1997). For example, where the defendant's intent was not at issue during trial, an erroneous attempted murder instruction does not necessarily constitute fundamental error. *Id.* In this post-conviction appeal, the State argues that Williams' intent was not an issue because he was convicted as an accomplice. We agree.

### C. Attempted Murder Instruction and Accomplice Liability

This case presents a unique and heretofore unaddressed issue regarding whose intent must be at issue to successfully challenge an attempted murder instruction as fundamental error when the thrust of the State's case is that the defendant was an accomplice to the crime and not the principal.[3]

 Pursuant to Indiana Code Section 35–41–2–4, a defendant may be convicted as an accomplice of attempted murder if the defendant "knowingly or intentionally aid[ed], induc[ed], or caus[ed] another person to commit ..." attempted murder. This statute superseded the common law distinction between a principal and an accessory. *Johnson v. State,* 687 N.E.2d 345, 349 (Ind. 1997). Under Indiana Code Section 35–41–2–4, a defendant who would have been considered an accessory under common law is now considered to have vicariously committed the underlying offense. *Id.* Because an accomplice is criminally responsible for all of the acts of his confederate which are the probable and natural consequences of the common plan, the specific intent to kill required for an attempted murder conviction may be inferred from the acts of the principal. *Vance v. State,* 620 N.E.2d 687, 690 (Ind.1993). Thus, in this case, the principal's

intent to kill the victim may be imputed to Williams. *Id.*

 Based on a review of the record of Williams' trial, it is clear to us that the entire theory of the State's case was that Williams was an accessory to and not the principal in the shooting. Correspondingly, the strategy of Williams' attorney was not to question the intent of the principal, but to prove that Williams did not aid, induce, or cause the principal to shoot the victim. In other words, Williams' trial strategy was to prove he was not an accessory to the crime. Because an accessory's intent may be imputed from the acts of the principal, we conclude that the relevant intent for purposes of the attempted murder instruction was not at issue.[4] Here, Williams' intent was imputed from the principal's actions, and the jury was never faced with the issue of whether the principal intentionally or knowingly shot the victim. The intent from which the jury imputed Williams' intent therefore was not at issue. Accordingly, in spite of the trial court's erroneous instruction and this court's subsequent approval thereof, we must find that the instruction did not constitute fundamental error. Although the reasoning in this court's previous decision is incorrect, we adhere to the fundamental principal of finality in concluding that the 'law of the case' doctrine bars Williams from relitigating this issue and that fundamental principals of fairness are not compromised thereby.

### II.

Williams also argues that the post conviction court erred when it determined that he was not entitled to a new trial based on newly discovered evidence, namely, the testimony of the principal, secured after Williams' trial. Again, we disagree.

---

3. The State charged Williams as the principal in its information; however, it is well established that the State may nevertheless proceed on an accomplice liability theory. *See Hoskins v. State,* 441 N.E.2d 419, 425 (Ind.1982).

4. In his Reply Brief, Williams argues that there was no evidence from which the jury could impute his intent from Allen. This court has already addressed this argument, however, in

William's direct appeal. In this court's memorandum opinion, this court recounted the evidence most favorable to the jury verdict which supports the conclusion that Williams acted in concert with Allen when Allen shot Spotten. See slip op. at 5–6; see also (R. 11–12). We find that this evidence is sufficient to establish that Williams and Allen acted in concert to accomplish the shooting.

The decision to grant or deny the defendant a new trial is reviewed only for an abuse of discretion. *Denney v. State,* 695 N.E.2d 90, 93 (Ind.1998). In order to warrant a new trial based on newly discovered evidence, the movant must show that the evidence: (1) has been discovered since the trial; (2) is material and relevant; (3) is not cumulative; (4) is not merely impeaching; (5) is not privileged or incompetent; (6) was not discoverable upon due diligence in time for trial; (7) is worthy of credit; (8) can be produced on a retrial of the case; and (9) will probably produce a different result. *Id.;* Trial Rule 59(A); *see also Wethington v. State,* 655 N.E.2d 91, 94 (Ind.Ct.App.1995), *trans. denied.* The defendant's motion for a new trial based upon newly discovered evidence is viewed with disfavor. *Denney,* 695 N.E.2d at 93. The defendant must show that the newly discovered evidence meets all nine prerequisites for a new trial. *Id.*

The evidence in question is testimony from the principal, Allen, that there was no agreement between himself and Williams to shoot the victim. This evidence does not satisfy at least two of the nine prerequisites outlined above. First, the evidence is cumulative. Williams himself testified at trial that he did not know Allen was going to shoot Spotten and had no time to stop him from doing so. Additionally, Albert Gaines testified as follows:

Q: Okay. Did either you or [Williams] have time to reach out and stop David?

A: No.

\* \* \*

Q: ... What did Richard Williams do that caused David Allen to shoot Scott Spotten, what did [Williams] do?

A: He didn't do nothing.

Q: What did Richard Williams do to induce David Allen to shoot Scott Spotten?

A: Nothing.

Q: How did Richard Williams help David Allen shoot Scott Spotten?

A: He didn't.

(S.R. 267–68). Both Williams and Gaines testified that Williams did not in any way help Allen shoot the victim. Thus, Allen's subsequent deposition is cumulative as it merely restates the same version of the events already presented at Williams' trial. Because this testimony is cumulative, we also conclude that the presentation of this evidence at Williams' trial would not have produced a different result. As a result, we conclude that the post conviction court properly denied Williams' request for a new trial based on newly discovered evidence.

### ·III.

Finally, Williams argues that he was denied effective assistance of trial counsel. Specifically, Williams contends that his attorney rendered ineffective assistance because he failed to secure the testimony of the shooter.

To prevail on an ineffective assistance of counsel claim, Williams must satisfy both parts of the two part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Whitener v. State,* 696 N.E.2d 40, 42 (Ind.1998). First, Williams must prove that his counsel's performance fell below an objective standard of reasonableness. *Id.* Second, Williams must demonstrate that the substandard performance was so prejudicial as to deny him a fair trial. *Id.* A defendant is denied a fair trial only when the conviction occurs as the result of a breakdown in the adversarial process which renders the trial result unreliable. *Id.* Isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. *Id.* We will presume that a trial counsel's performance has met the above standard of reasonableness, and a defendant must overcome this presumption with strong and convincing evidence to prevail on his claim. *Coleman v. State,* 694 N.E.2d 269, 272–73 (Ind.1998).

Williams raised this issue on direct appeal, and this court concluded that Williams was not denied effective assistance of counsel. In its memorandum decision, this court concluded: .

Trial counsel did not take depositions of ... [the principal] because to have done so would have jeopardized Williams' case.... [T]rial counsel discovered that [the princi-

pal] had alluded to the shooting as Williams' idea.

*Williams,* slip. op. at 7. Williams does not argue that this court's decision in this regard was clearly erroneous. Further we conclude that this decision was not in error. As indicated above, Allen's testimony was cumulative, and therefore, counsel's decision not to locate Allen did not prejudice Williams. Moreover, counsel's decision not to obtain the testimony of Allen was a strategic decision not to locate a possibly adverse witness. A matter of trial strategy cannot form the basis of an ineffective assistance of counsel claim unless there was no basis for pursuing it. *Roche v. State,* 690 N.E.2d 1115, 1126 (Ind. 1997). Based on defense counsel's belief that Allen could be an adverse witness and because defense counsel had available Williams' nearly identical, exculpatory testimony, we conclude that defense counsel had an adequate basis for not seeking Allen's testimony.

For the foregoing reasons, we conclude that the post conviction court did not err when it refused to grant Williams a new trial.

Affirmed.

SHARPNACK, C.J., and DARDEN, J., concur.