**Edward M. HOPKINS, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0109–CR–590.**

Court of Appeals of Indiana.

June 13, 2002.

Michael Gene Worden, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Edward M. Hopkins appeals his conviction after jury trial of attempted murder, a Class A felony. We affirm.

### Issue

Hopkins raises one issue for our review which we restate as whether his conviction for attempted murder must be reversed due to fundamental error in an attempted murder jury instruction.

### Facts and Procedural History

The facts are as set forth in Hopkins's prior appeal:

In the early morning hours of March 9, 1999, George Martinez and Paula McCarty were returning to Martinez's residence after an evening of bar hopping. They saw Hopkins and his brother Anthony stranded by the roadside. McCarty and Martinez stopped and gave

the brothers a jumpstart. Martinez offered to "hold" anything Anthony had with him to keep it out of police hands should he continue to have car problems that evening. The car started, but shortly thereafter, Hopkins found Martinez and McCarty at a nearby Village Pantry and explained that he and his brother needed another jumpstart. At this point, Anthony accepted Martinez's previous offer to "hold" any property. They all went to Martinez's residence, where Anthony gave Martinez a handgun. Anthony and Hopkins then left.

About fifteen minutes later, Hopkins and Anthony returned to Martinez's house. Martinez and McCarty assumed the brothers had further car problems, let them in, and prepared to give them a ride home. Hopkins and Anthony asked for the gun back, and Martinez obliged. As the group approached the front door to leave, Anthony locked the front door, pointed the gun at Martinez and McCarty, and ordered them to go to the basement. Once in the basement, Anthony ordered Martinez and McCarty to strip naked and empty their pockets. Anthony handed the gun to Hopkins, and Anthony went upstairs where he took approximately two to three pounds of marijuana and $ 4,500.00.

Hopkins remained in the basement and shot Martinez in the neck. Anthony returned to the basement, took the gun and shot McCarty. While McCarty pretended to be dead, Hopkins and Antho-

ny left. McCarty and Martinez worked together to use a cellular phone to call for help, as he could not speak above a whisper and her spinal cord was severed from the gunshot.

*Hopkins v. State,* 747 N.E.2d 598, 601 (Ind.Ct.App.2001), *trans. denied.*

On March 27, 2000, Edward Hopkins was tried together with his brother Anthony. The same jury instructions were given for both defendants. Edward Hopkins was found guilty of attempted murder, a Class A felony, as well as robbery, also a Class A felony, criminal confinement, a Class B felony, and carrying a handgun without a license, a Class A misdemeanor. On May 1, 2000, Edward Hopkins was sentenced to a total of 146 years imprisonment. His brother, Anthony, was sentenced to 166 years.

Edward Hopkins appealed to this court, and on April 30, 2001, we issued an opinion which affirmed the convictions but remanded the case to the trial court for resentencing. Edward Hopkins' request for transfer to the Indiana Supreme Court was denied. After remand, the resentencing hearing was held on August 17, 2001, and Hopkins was resentenced to a total of ninety years imprisonment. Hopkins then instituted this appeal.

On December 20, 2001, the Indiana Supreme Court reversed Anthony Hopkins' conviction, holding that the attempted murder/accomplice liability instruction was fundamentally erroneous.[1] *Hopkins v. State,* 759 N.E.2d 633 (Ind.2001).

---

1. The trial court gave the following instructions on accomplice liability:

Instruction 10: You are instructed that when two or more persons combine to commit a crime, each is criminally responsible for the acts of his confederate(s) committed in furtherance of the common design, the act of one being the act of all.

Instruction 11: A person is responsible for the actions of another person when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime. In order to be held responsible for the action of another, he need only have knowledge that he is help-

*Discussion and Decision*

### Instruction Error

■ Hopkins argues that the trial court's instruction on accomplice liability and attempted murder constituted fundamental error. Hopkins made this same argument in his original direct appeal, and this court disagreed. Upon appeal from his resentencing, Hopkins now attempts to make the same argument as an exception to the law of the case doctrine.

■ The law of the case doctrine[2] mandates that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and relevantly similar facts. *State v. Huffman*, 643 N.E.2d 899, 901 (Ind.1994). The doctrine's admittedly important purpose is to minimize unnecessary relitigation of the legal issues once they have been resolved by an appellate court. *Id.*

In the present case, there is no question that the present appeal is the same case with the same facts. Both the first direct appeal and the present direct appeal involve Edward Hopkins's convictions for the robbery, confinement, and attempted murder of George Martinez and Paula McCarty. In the earlier direct appeal, this court affirmed the propriety of the instructions on attempted murder and accomplice liability that Hopkins once again attempts to challenge. Thus, the law of the case doctrine would normally bar Hopkins from relitigating this issue.

However, Hopkins argues that his case falls within a narrowly defined exception to the law of the case doctrine. Our supreme court has stated,

> With due respect for the doctrine of *res judicata*, this Court has always maintained the option of reconsidering earlier cases in order to correct error. A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice. Finality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter.

*Huffman*, 643 N.E.2d at 901.[3]

Hopkins argues that his case is similar to *Turner v. State*, 751 N.E.2d 726 (Ind.Ct.

---

ing in the commission of a crime. He does not have to personally participate in the commission of each element of a crime. Proof of the Defendant's failure to oppose the commission of a crime, presence at the crime scene, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.

*Anthony Hopkins v. State*, 759 N.E.2d 633, 637–38 (Ind.2001).

2. In *Williams v. State*, 715 N.E.2d 882 (Ind. Ct.App.1999), *rev'd on other grounds*, 737 N.E.2d 734 (Ind.2000), we noted that, in the past, the terms "law of the case doctrine" and "res judicata" had been used interchangeably. We also noted in *Williams* that they are two separate concepts: the law of the case doc-

trine is a discretionary doctrine which is implicated when a litigant asks a court to revisit an earlier decision of its own in a collateral appeal of that decision and expresses the practice of courts generally to refuse to re-open what has been decided. Res judicata provides that a judgment on the merits is an absolute bar to a subsequent action on the same claim between the same parties. 715 N.E.2d at 886. Because Hopkins asks this court to revisit its earlier decision regarding the instruction issue, the law of the case doctrine is the appropriate doctrine to be applied in this case.

3. Notably, *Huffman* was one of those cases to which *Williams* referred as using the terms "law of the case" and "res judicata" interchangeably. *See Williams*, 715 N.E.2d at

App.2001), in which we applied the *Huffman* exception. In *Turner*, two co-defendants separately appealed, and each raised the issue of the trial court's refusal to instruct the jury on the lesser included offenses of reckless homicide and criminal recklessness. Turner's conviction was affirmed on appeal while his co-defendant's was reversed because the refusal of instructions was clearly erroneous. Turner raised this issue in his post-conviction relief petition and, on the appeal of the denial of that petition, this court determined the issue was not barred by the law of the case doctrine. *Id.* at 734. The contrary decision in the co-defendant's case cast enough doubt on the initial decision that refusing to revisit the prior decision may have worked "manifest injustice." *Id.*

Similarly, Hopkins argues that the Supreme Court's decision in his brother's case, that the jury instructions were fundamentally erroneous, should carry over to his case and, pursuant to the *Huffman* exception to the law of the case doctrine, merits revisiting our earlier decision. This may be a valid claim. However, this court is not the correct forum to hear that issue at this time. In *Turner*, the defendant first raised the issue of a possible *Huffman* exception in a post-conviction relief petition. Only upon a denial of that petition did this court determine the issue. We have never considered application of the *Huffman* exception without it first being presented to a lower court through whatever procedural mechanism was appropriate. *See State v. Lewis*, 543 N.E.2d 1116, 1118–19 (Ind.1989) (direct appeal); *Turner*, 751 N.E.2d at 734 (post-conviction petition). Likewise, Edward Hopkins would be entitled to a review of this issue in this court upon a denial of a post-conviction petition by the post-conviction court. Until that time, the issue of instructional error must be barred from further review by the doctrine of law of the case.

*Conclusion*

For the reason stated, we hold that the issue of the alleged instructional error has been considered and resolved in a prior appeal and, as such, is now barred from further review on direct appeal by the doctrine of the law of the case. Since this is the only issue raised upon appeal, we affirm the conviction.

Affirmed.

BAILEY, J., and NAJAM, J., concur.

---

885. Although *Huffman* stated that it was giving due regard to the doctrine of "res judicata," it is clear that the doctrine which was being applied was actually the law of the case.