## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Chris M. Teagle
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

N. S.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 31, 2019

Court of Appeals Case No.
19A-JV-165

Appeal from the Blackford Circuit Court

The Honorable Dean Young, Judge

Trial Court Cause No.
05C01-1808-JD-82

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, N.S., appeals the juvenile court's denial of his motion to correct error following his adjudication as a delinquent child for having committed what would have constituted intimidation, a Level 5 felony, if committed by an adult, by placing his victim in fear of retaliation for a prior lawful act while using a deadly weapon.

We affirm.

# ISSUE

N.S. presents one issue on appeal, which we restate as: Whether the juvenile court abused its discretion in denying N.S.'s motion to correct error after submitting new evidence which purportedly establishes the complaining witness recanted his previous trial testimony.

# FACTS AND PROCEDURAL HISTORY

On April 23, 2018, M.R. was at Sigma Park in Hartford City, Indiana, when he was approached by N.S. The boys knew each other from school. However, N.S. had been found in possession of marijuana on school property and had been expelled. When N.S. noticed M.R. at the park, N.S. dismounted his bike, and accosted M.R., asking him if M.R. had "snitched on him." (Transcript p. 7). M.R. denied this, but N.S. stated, "we have a video of you going down to the office and snitching." (Tr. p. 7). N.S. then pulled a black knife with a silver blade and told M.R. that he was "going to cut [his] shit if [he] snitch[ed] on [him] again." (Tr. p. 8). M.R. walked away and N.S. screamed, "You're a

dead nigga." (Tr. p. 9). When M.R. returned home, he informed his parents of the incident. M.R.'s parents contacted the police.

[5] Victoria Eppard (Eppard) lived in the residence near where M.R. and N.S. were arguing. She was keeping an eye on the confrontation because she did not want a fight to ensue. She saw N.S. pull a knife on M.R. "like [N.S.] was being threatening [sic]," with the blade of the knife being "as clear as day." (Tr. p. 16). Eppard called the police.

[6] On August 6, 2018, the State filed a Petition, alleging N.S. to be a delinquent child for having committed what would have constituted intimidation, a Level 5 felony, if committed by an adult by using a deadly weapon to place M.R. in fear of retaliation for a prior lawful act. On October 23, 2018, the juvenile court conducted a fact-finding hearing. During the hearing, M.R. was asked multiple times whether he had lied to others about the incident. Each time, M.R. denied lying and maintained his allegation that N.S. had pulled a knife on him and had threatened him. N.S. presented two witnesses who testified that M.R. had told them that N.S. had not pulled a knife on him. At the conclusion of the fact-finding hearing, the juvenile court issued an order, finding that the State had established beyond a reasonable doubt that N.S. had committed what would be a Level 5 felony intimidation if committed by an adult. On November 16, 2018, the juvenile court held a dispositional hearing and placed N.S. in the custody of the Blackford County Probation Department Juvenile Division.

[7]     On December 12, 2018, N.S. filed a motion to correct error based on newly-discovered evidence. Six days later, on December 18, 2018, the juvenile court conducted a hearing on N.S.'s motion. Denying the motion, the juvenile court concluded, in pertinent part:

> 3. That the [c]ourt has reviewed the newly discovered evidence, which consists of a 44-second recording of the victim in this case which was obtained by the juvenile's girlfriend and produced in open court.
>
> 4. That the video recording is offered by the juvenile to demonstrate that the victim lied during his testimony on the State's Petition Alleging Delinquency with respect to the alleged conduct engaged in by the delinquent in this case. Having heard the video recording the [c]ourt does not find persuasive the juvenile's contention that the victim's testimony is not credible. The victim does make certain references that he attempted to get the Prosecuting Attorney to drop the charges in this case and that he told the Prosecutor that he had lied. No reference is made as to which facts he lied about. However, the victim in this case is also a minor child and it is clear from the testimony presented during trial and also during the hearing on the [m]otion to [c]orrect [e]rror that the victim has been under continuing and intense pressure by friends and family of the delinquent to admit that he was lying about the facts of the case.
>
> 5. That the victim testified regarding the statements made in the video recording and acknowledged that he in fact did make those statements. However, the victim also indicated that his statements were made in response to constant questioning and urging by the delinquent's girlfriend, members of the delinquent's family, and others to confess to lying regarding the allegations contained in the State's petition.

6. That following the bench trial on the State's Petition Alleging Delinquency the [c]ourt indicated on the record and before the parties and their counsel that the [c]ourt placed great weight on the testimony of [Eppard]. [Eppard] was an adult witness to the events alleged in the State's petition and she corroborated in all respects the relevant testimony of the victim through her own eye-witness account.

7. That the [c]ourt is aware from its own common sense and life's experiences that young persons who are subject to constant pressures and questioning regarding an event may recant their testimony in their effort to terminate the incessant barrage of questioning and urging by others. Further, this [c]ourt had an opportunity to judge the demeanor of all witnesses while they testified in this case, the circumstances surrounding the "newly discovered" video-tape evidence, and to weigh that testimony and observations in light of all other testimony and observations in concluding beyond a reasonable doubt that the juvenile delinquent committed the acts of delinquency as alleged in the State's petition. Further, no evidence has been presented which moves the [c]ourt from its earlier conclusion of guilt beyond a reasonable doubt.

(Appellant's App. Vol. II, pp. 63-65).

[8] N.S. now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[9] N.S. contends that the trial court abused its discretion by denying his motion to correct error based on newly-discovered evidence warranting a new trial, *i.e.*, a video-taped statement indicating that the witness recanted his previous testimony. A trial court is vested with the discretion to deny a motion to

correct error alleging newly-discovered evidence, and we will reverse only for an abuse of that discretion. *Harbert v. State*, 51 N.E.3d 267, 280 (Ind. Ct. App. 2016), *trans. denied*.

[10]   Motions for a new trial based on newly-discovered evidence are generally disfavored. *Denny v. State*, 695 N.E.2d 90, 93 (Ind. 1998). To succeed, the defendant must satisfy a nine-part test, submitting proof that establishes:

> (1) that the evidence has been discovered since trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result.

*Harbert*, 51 N.E.3d at 280. The defendant bears the burden of showing that the newly-discovered evidence meets all nine requirements. *Godby v. State*, 736 N.E.2d 252, 258 (Ind. 2000), *reh'g denied*.

[11]   Here, N.S.'s newly-discovered evidence amounts to a post-trial video-recording in which M.R. states that he had lied and wanted the prosecutor to drop the charges. Although the recording merely impeaches M.R.'s previous testimony, as referenced by N.S., "our supreme court decided long ago that evidence which destroys or obliterates the testimony upon which a conviction was obtained is not appropriately considered as merely impeaching evidence." *Dennis v. State*, 2 N.E. 349, 355 (Ind. 1885); *Wilson v. State*, 677 N.E.2d 586, 588 (Ind. Ct. App. 1997). However, even though M.R. appears to admit in the

recording that he lied, he never explained what exactly he lied about or what statement he recanted. As such, we cannot say that the newly-discovered evidence "destroys or obliterates" M.R.'s trial testimony. *See Dennis*, 2 N.E.at 355.

[12] Moreover, even if we characterize M.R.'s recorded statement as a complete recantation of his previous trial testimony, the State correctly points out that a recantation, or even an admission of perjury, does not necessarily lead to a new trial if the introduction of the evidence would not probably result in a different outcome. *See Wilson v. State*, 677 N.E.2d at 589. In its findings denying N.S.'s motion to correct error, the juvenile court explained that it had placed "great weight" on Eppard's testimony in the adjudication of N.S., as Eppard was an adult, independent eye-witness who corroborated M.R.'s statements. (Appellant's App. Vol. II, p. 64). Furthermore, the juvenile court accounted for M.R.'s recorded statement as the result of "the incessant barrage of questioning and urging" by N.S.'s family and friends and thus found the recording to be unpersuasive. (Appellant's App. Vol. II, p. 64). Mindful of the juvenile court's detailed order, we cannot conclude that the introduction of this new evidence would probably result in a different outcome. *See id.* Therefore, we decline to find error in the juvenile court's denial of N.S.'s motion to correct error.

## CONCLUSION

[13] Based on the foregoing, we hold that the juvenile court appropriately denied N.S.'s motion to correct error based on new evidence.

[14] Affirmed.

[15] Vaidik, C. J. and Bradford, J. concur