Sedrick Lamont CURTIS,
Appellant–Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 45A05–0810–PC–580.

Court of Appeals of Indiana.

Feb. 25, 2009.

Publication Ordered May 1, 2009.

Susan K. Carpenter, Public Defender of Indiana, Anne Murray Burgess, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Sedrick Lamont Curtis appeals the denial of his petition for post-conviction relief. We affirm.

### Issues

We restate the issues as follows:

I. Was Curtis's counsel ineffective in stipulating to certain pretrial hearsay statements?

II. Was his counsel ineffective in failing to hire an expert in child forensic interviews?

III. Was his counsel ineffective in failing to object to certain vouching testimony by the victims' child psychologist?

IV. Was his counsel ineffective in failing to request a jury instruction pursuant to Indiana Code Section 35–37–4–6(h)?

V. Was his counsel ineffective in failing to object to evidence of his marijuana use?

### Facts and Procedural History

The facts as summarized by this Court on direct appeal and adopted by the post-conviction court are as follows:

Curtis is the biological father of M.C., born on November 5, 1998, and was living with Shamika Lewis, who is M.C.'s biological mother, and her three other children, C.B., born on June 4, 1994, S.B., born on July 10, 1995, and S.L., born on July 16, 1996. Prior to August 2001, C.B., S.B., S.L., and M.C. (collectively, "the children") lived with Curtis and Lewis in Lake County, Indiana. On August 31, 2001, as a result of allegations of physical abuse, the children were removed from Curtis and Lewis's home and placed in foster care with Evelyn Murad. During the children's stay, Murad observed scars and open lacerations on C.B.'s back, arm, and side; open lacerations on S.B.'s back and thigh; and open lacerations on S.L.'s thigh and arm. The children also told Murad "secrets" they had about Curtis and Lewis. C.B. told Murad that Curtis and Lewis forced the children to perform oral sex on them. C.B. also stated that Curtis and Lewis would "whoop" the children with an extension cord. C.B. told Murad that Curtis

forced C.B. and S.B. to perform sexual acts upon one another, sometimes in front of other people. C.B. also told Murad that Curtis forced S.B. and S.L. to perform sexual acts on one another as well. S.B. told Murad that Curtis would pick her up when they were both naked, press her close, and "dance around" with S.B. until "white stuff came out." Tr. 347.

After hearing these secrets from the children, Murad contacted the children's caseworker about the alleged abuse. The Lake County Advocacy Center conducted videotaped interviews of the children separately. During his interview, C.B. stated that Curtis placed his penis in C.B.'s "behind." C.B. also stated that Curtis forced S.B. and S.L. to "suck" between one another's legs. During her videotaped interview, S.B. stated that Curtis made her suck between his legs and stuck his penis between her legs. S.L. stated in her interview that she had to suck Curtis's "ding-a-ling," and that C.B.[,] S.B., and M.C. had to do it too. Also, S.L. stated that Curtis touched her "coo-coo." All three children recounted a similar story during their videotaped interviews where Curtis forced M.C. to give him oral sex, and M.C. bit down on Curtis's penis.

Doctor Edwin Udani conducted a physical examination on the children for signs of physical and sexual abuse. He found multiple scars on C.B. and S.B.'s backs. Subsequently, Doctor Kalyani Gopal interviewed the children separately about the allegations of abuse. After the children reported their allegation, Dr. Gopal began therapy with the children. During a therapy session, C.B. told her that Curtis forced C.B. to give him oral sex, and Curtis anally raped C.B. S.B. told Dr. Gopal that Curtis forced C.B. and S.B. to "pee" in each other's mouths. In a therapy session

with Dr. Gopal, S.L. told the same story. Also, the children each told Dr. Gopal a story about Curtis forcing M.C. to perform oral sex on him, and M.C. biting Curtis's penis. *Curtis v. State*, 45A03–0406–CR–273, slip op. [823 N.E.2d 769] (March 4, 2005).

Appellant's App. at 168–69.

In May 2002, the State charged Curtis with various acts of child molesting, vicarious sexual gratification, and battery. The State ultimately amended the information and charged him with four counts of class A felony child molesting, four counts of class C felony vicarious sexual gratification, and three counts of class D felony battery. Following an August 2002 jury trial, Curtis was convicted on all four counts of child molesting, all three counts of battery, and two of the four counts of vicarious sexual gratification. His aggregate sentence was 128 years. On March 4, 2005, this Court affirmed his convictions and sentence on direct appeal.

On March 7, 2006, Curtis filed a pro se petition for post-conviction relief. On February 27, 2007, and May 23, 2007, he filed amended petitions by counsel. The post-conviction court held hearings on May 17 and May 29, 2007. On June 11, 2008, the post-conviction court entered findings of facts and conclusions of law denying Curtis's petition. This appeal ensued. Additional facts will be provided as necessary.

**Discussion and Decision**

 Curtis contends that the post-conviction court erred in denying his petition. The petitioner in a post-conviction proceeding "has the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post–Conviction Rule 1(5); *Brown v. State*, 880 N.E.2d 1226, 1229 (Ind.Ct.App.2008), *trans. denied.* When appealing the denial of a petition for post-conviction relief, the petitioner stands

in the position of one appealing a negative judgment. *Brown,* 880 N.E.2d at 1229. Therefore, "[o]n review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court." *Id.* Here, the post-conviction court entered extensive findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Brown,* 880 N.E.2d at 1230 (citation and quotation marks omitted).

 Curtis claims that he was denied his constitutional right to effective assistance of counsel. A petitioner must satisfy two components to prevail on his ineffective assistance claim. *Id.* He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Brown,* 880 N.E.2d at 1230. "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State,* 875 N.E.2d 706, 714 (Ind. 2007). Prejudice occurs when a reasonable probability exists that, "but for counsel's errors the result of the proceeding would have been different." *Brown,* 880 N.E.2d at 1230. We can dispose of claims upon failure of either component. *Id.*

### I. Stipulation

 Curtis asserts that his trial counsel's decision to stipulate to certain pretrial hearsay statements amounted to ineffective assistance. The record indicates that the children had given over sixty interviews, and counsel stipulated to the admissibility of their various accounts of alleged sexual abuse. In support of his ineffective assistance argument, Curtis points to Indiana Code Section 35–37–4–6(e)(1)(B), which allows the introduction of statements made by children in certain criminal actions only if the trial court finds "that the time, content and circumstances of the statement or videotape provide sufficient indications of reliability." He asserts that because the stipulated statements lacked reliability, they would have been inadmissible and therefore were improper for stipulation.

In fact, it is the unreliability of the statements themselves that led to counsel's decision to stipulate to their admission. The post-conviction court found that counsel stipulated to the introduction of the children's statements because they "were different, inconsistent, and bizarre" and therefore would serve to give the defense "the upper hand in creating reasonable doubt." Appellant's App. at 170. The court then concluded that "[t]rial counsel had a definite strategy for stipulating to the admission of the statements" and that the decision "was reasoned, deliberate and certainly strategic." *Id.* at 172.

 "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied* (2002). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Strategies are assessed based on facts known at the time and will not be second-guessed even if the strategy in hindsight did not serve the post-conviction petition-

er's best interests. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997), *cert. denied* (1998).

Curtis's counsel's stipulation to the admission of the children's statements was strategic. He did so after many hours of consultation with other experienced defense attorneys connected with the case.[1] While some question existed as to the admissibility of the children's statements, counsel concluded that the evidence would be introduced in one form or another and that the inconsistencies among the statements might work to Curtis's advantage. Curtis makes much of the fact that the children never testified on the witness stand and asserts that the pretrial hearsay statements served as the bases for the sexual abuse convictions. To the extent Curtis claims that the fact that he was convicted demonstrates the failure of his counsel's strategy, we note that he was acquitted on two of the vicarious sexual gratification charges. Although the record is unclear, the strategy employed by his counsel may have been a factor in those acquittals. The post-conviction court properly refused to second-guess that strategy.

## II. Child Interview Expert

■■■ Curtis also contends that his trial counsel provided ineffective assistance when he failed to hire an expert in child forensic interviewing. He asserts that his case involved the complicated issues of memory and suggestibility of multiple children, which are not topics within the knowledge of the average juror.

We expect jurors to draw upon their own personal knowledge and experience in assessing credibility and deciding guilt or innocence. When they are faced with evidence that falls outside common experience, we allow specialists to supplement the jurors' insight. Indiana Evidence Rule 702(a) says: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, *may* testify thereto in the form of an opinion or otherwise."

*Carter v. State*, 754 N.E.2d 877, 882 (Ind. 2001) (emphasis added), *cert. denied* (2002). However, in the context of an ineffective assistance claim, "a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind.Ct.App.2005), *trans. denied.*

Here, Curtis's counsel was experienced in trying child molesting cases and was aware of strategies for challenging the reliability of a child's statements. During voir dire, he examined the potential jurors' views regarding the general propensity among children to exaggerate, imagine, lie, or be influenced by an adult's suggested response. He also elicited testimony from the alleged victims' therapist, Dr. Gopal, regarding false positives and the shaping of children's responses.[2] To the extent Curtis argues that with the help of an expert, his counsel would have succeeded in having the children's pretrial statements excluded, we reiterate that counsel's strategy included the use of the statements to show inconsistency and raise doubt. Thus, expert testimony to the contrary would have been counterproductive to this strate-

---

1. Curtis's counsel, T. Lee Boyd, is licensed in the state of Illinois. Indiana attorney Michael Davis served as local counsel, and Lemuel Stigler also participated in the case as counsel for the children's mother.

2. A false positive occurs when a child inaccurately interprets a nonsexually abusive event as a sexually abusive event.

gy. As such, we find neither deficient performance nor prejudice to Curtis stemming from his counsel's decision not to hire an expert witness.

### III. Vouching

■ Next, Curtis contends that his trial counsel's failure to object to certain vouching testimony constituted ineffective assistance. "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Ind. Evidence Rule 704(b).

Here, the trial court granted Curtis's pretrial motion in limine, ruling that Dr. Gopal's opinion regarding the truth of the children's allegations of the sex acts they were forced to perform would be inadmissible. On cross examination of Dr. Gopal, the defense raised the issue of false positives. On re-direct, the State asked Dr. Gopal, "In your opinion, do these children give false positives?" Tr. at 728. Dr. Gopal responded, "No." *Id.* Defense counsel did not object.

The post-conviction court made the following conclusion regarding Dr. Gopal's testimony:

> [I]t was appropriate for the jury to hear the definition of a false positive so that each juror might consider how to judge the evidence. It was not appropriate however, for a witness to be asked to express a judgment of the evidence. The failure to object to Dr. Gopal's opinion fell below prevailing professional norms. However, we conclude that it did not prejudice the petitioner. The very limited scope of the opinion, it's [sic] terseness, compared to the breadth of evidence concerning the injuries to the children's bodies and the acts to which they were subjected leads us to conclude that the error was harmless. Counsel's failure to object to Dr. Gopal's opinion did not amount to ineffective assistance of counsel.

Appellant's App. at 175.

Curtis relies on *Rose v. State,* 846 N.E.2d 363 (Ind.Ct.App.2006), in arguing that his counsel's failure to object to vouching testimony amounted to deficient performance that prejudiced him. In *Rose,* we held that counsel was ineffective in failing to object to numerous vouching statements made by the doctor who examined the alleged child molesting victim. 846 N.E.2d at 369. In that case, the doctor's "vouching statements were neither inadvertent nor incidental but were *the centerpiece of his testimony." Id.* (emphasis added). Here, however, Dr. Gopal gave a one-word response to a single question.[3] Thus, when placed in the context of a record that exceeds one thousand pages, we find no error in the post-conviction court's conclusion that Curtis was not prejudiced by Dr. Gopal's isolated vouching statement.

### IV. Jury Instruction

■ Curtis also argues that his trial counsel provided ineffective assistance in failing to request a jury instruction pursuant to the child hearsay statute. Indiana Code Section 35–37–4–6 outlines factors to be considered when evaluating statements by alleged child molesting victims. The statute provides in part:

> (h) If a statement or videotape is admitted in evidence under this section,

---

**3.** To the extent Curtis relies on *Rose* based on a similar lack of physical evidence of sexual abuse, we note that many of the deviant acts Curtis either performed on his children or forced them to perform with each other are not the type that result in physical evidence, especially given the fact that approximately ten weeks had elapsed between the time of the most recent acts and the time the children were medically examined.

the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement or videotape and that, in making that determination, the jury shall consider the following:

(1) The mental and physical age of the person making the statement or videotape.

(2) The nature of the statement or videotape.

(3) The circumstances under which the statement or videotape was made.

(4) Other relevant factors.

(i) If a statement or videotape described in subsection (d) is admitted into evidence under this section, a defendant may introduce a:

(1) transcript; or

(2) videotape;

of the hearing held under subsection (e)(1) into evidence at trial.

The post-conviction court made the following conclusions regarding defense counsel's decision not to request an instruction:

17. When a defendant alleges trial counsel ineffective for failing to tender a proposed jury instruction the defendant must show that had trial counsel tendered a proper instruction the trial court would have been required to give the tendered instruction. *Little v. State*, 819 N.E.2d 496 (Ind.Ct.App.2005), trans. denied.

18. The statements and videotapes of the children were not "admitted in evidence under [I.C. 35–37–4–6(h)]." The statements were admitted in evidence by stipulation of the parties. Therefore, the trial court would not have been required to instruct the jury under I.C. 35–37–4–6(h) had defense counsel requested it. We conclude that coun-

sel was not ineffective in this regard.

Appellant's App. at 173.

We agree with the post-conviction court. Moreover, the record indicates that the jury received numerous instructions on the issue of assessing witness credibility. Thus, even if a specific instruction pursuant to the child hearsay statute had been appropriate, its absence was not prejudicial. The post-conviction court properly concluded that defense counsel was not ineffective for failing to request a child hearsay instruction.

### V. Marijuana Use

Finally, Curtis asserts that his trial counsel's failure to object to evidence of his marijuana use constituted ineffective assistance. He claims that the evidence bore no relevance to the charges and that the State offered it to demonstrate that he was a person of bad character. Indiana Evidence Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The post-conviction court made the following conclusion regarding this issue:

The petitioner alleges counsel ineffective for failing to object to inadmissible evidence under I.R.E. 404(b), specifically, defendant's regular use of marijuana. Prior to the presentation of evidence at

trial, counsel moved for a ruling in limine to prohibit the admission of this information. The court denied the motion in limine to prohibit the admission of this information. The court denied the motion in limine ruling that the marijuana use was inextricably bound with the charged crimes. Therefore, we conclude that the court would have overruled an objection on this issue at trial. The failure to object at trial did not prejudice the petitioner. Because we have resolved the question of ineffectiveness based on an analysis of prejudice, we need not reach the question of whether failure to contemporaneously object to the evidence fell below prevailing professional norms. We conclude that counsel was not ineffective for failing to object at trial to evidence of the petitioner's regular marijuana use.

Appellant's App. at 174 (citation omitted). Counsel is not rendered inadequate for failing to make a futile objection. *Minor v. State,* 641 N.E.2d 85, 91 (Ind.Ct.App. 1994), *trans. denied.* Failure to object to admissible evidence does not constitute deficient performance by counsel; rather, a defendant must show that had a proper objection been made the court would have had no choice but to sustain it. *Garrett v. State,* 602 N.E.2d 139, 141 (Ind.1992). "Counsel cannot be faulted for failing to make an objection which had no hope of success and which might have the adverse effect before the jury of emphasizing the admissibility of [the evidence]." *Id.*

Here, defense counsel twice argued against the admission of evidence regarding Curtis's marijuana use. Both at the pretrial conference and at the start of trial, the trial court responded by refusing to exclude this evidence. Thus, defense counsel's failure to make a third attempt to exclude the same evidence was not prejudicial to Curtis's case. Accordingly, we affirm the post-conviction court in all respects.

Affirmed.

ROBB, J., and BROWN, J., concur.

### *ORDER*

February 25, 2009, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Verified Motion to Publish Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Verified Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion handed down in this cause on February 25, 2009, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

ROBB, CRONE, and BARNES, JJ., concur.