**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**J. MICHAEL SAUER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ARTHUR J. BRYANT,          )
            )
    Appellant-Defendant,    )
            )
        vs.         )    No. 31A04-1109-PC-542
            )
STATE OF INDIANA,        )
            )
    Appellee-Plaintiff.     )

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Roger D. Davis, Judge
Cause No. 31D01-0506-PC-2

**October 2, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Arthur John Bryant appeals from the post-conviction court's order denying his petition for post-conviction relief. Bryant presents the following issues for our review, which we restate as:

1.    Did the post-conviction court err by concluding that Bryant was not denied the effective assistance of trial counsel?

2.    Did the post-conviction court err by concluding that Bryant was not denied due process by the State's failure to provide a witness statement during discovery prior to Bryant's trial?

3.    Were the alleged cumulative errors made by Bryant's trial counsel and the discovery failure such that Bryant is entitled to have his conviction reversed and a new trial ordered?

We affirm.

In a published decision affirming Bryant's convictions upon direct appeal, this court set out the underlying facts as follows:

The facts most favorable to the verdict are that seventeen-year-old Bryant was living with his father, Lee, and stepmother, Carol. Kristi— Bryant's mother—determined that she could no longer control her son's behavior. At some point, Bryant had been adjudicated a juvenile delinquent for committing a number of offenses.

It was revealed that Bryant stole from Kristi, threatened her with a baseball bat and choked her on at least one occasion. Bryant had also threatened to kill Carol and expressed hostility toward her in some poetry he had written, which included references to a person being found dead in the trunk of an automobile.

On Tuesday, January 4, 2000, Bryant and Carol argued. When Lee returned home from work the following day, neither Bryant nor Carol was at home. Lee eventually discovered a note Bryant had written explaining that he was going to spend the night with his friend, Doug Kintner. However, when Carol did not return home, Lee became concerned and telephoned Carol's mother and some other people. Lee also drove to various places in search of his wife. When Carol had still not returned the following day, Lee reported her missing to the police.

2

The police discovered Carol's vehicle early Saturday morning on State Road 56 in Washington County. At Kristi's suggestion, the police looked inside the trunk and found Carol's dead body wrapped in a comforter. An investigation revealed that Carol had died from asphyxiation as a result of ligature strangulation. Thereafter, the police located Bryant and arrested him in Salem on January 8, 2000. At the time of the arrest, Bryant was approximately one month away from his eighteenth birthday.

It was determined that between Wednesday and Saturday, Bryant had driven Carol's vehicle, with her body inside the trunk. He showed off the car to his friends, gave away some of Carol's jewelry, and sold some of her property to a pawnshop.

After the arrest, Bryant told his mother that he could not take any more of Carol's "crap," and he also had told Lee that "it was either her or me." Tr. p. 1351–55; 1449–50, 1950–52. DNA analysis on a pair of jeans recovered by the police from the trunk of Carol's car showed that the jeans contained Carol's bodily fluids, and that Bryant had worn the jeans.

While at the police station, Detective Richard Bauman of the Harrison County Sheriff's Office attempted to question Bryant. Bryant immediately requested the presence of an attorney, whereupon Detective Bauman permitted him to consult with Kristi in an interview room. However, Detective Bauman and Officer William Whelen secretly listened to the conversation and recorded it by means of a hidden microphone and video camera. While the recording is inaudible, Detective Bauman and the officer both testified "[d]uring the time set for Kristi and [Bryant] to talk, [Bryant] informed her that he had told his father that he had a problem with Carol. He told his father to take care of it or he would. He said he took care of it." Tr. p. 271, 277, 1355. Detective Bauman initially testified at a motion to suppress hearing and in his deposition that he heard this statement as he entered the interview room. However, he changed his testimony at trial, indicating that he heard this statement while secretly listening to the conversation by means of the hidden microphone. While Bryant objected to Officer Bauman's testimony, he failed to object to the statements made by Officer Whelen.

Also at trial, the State established that Bryant enjoyed listening to rap music and would spend time rewriting the lyrics to certain songs. Some of the lyrics Bryant wrote referenced placing a body in the trunk of a car. At some point, the police discovered the poems, and the State offered them into evidence in an effort to insinuate that they foretold Carol's murder.

3

Bryant's defense at trial was that Lee had committed the murder. In an effort to establish that defense, Bryant made offers of proof to demonstrate that Carol and Lee's relationship was violent. The particular evidence sought to establish that Carol feared Lee and wanted to leave him. Several witnesses testified that Lee had physically attacked Carol several months before the murder. These witnesses also testified that Lee would choke Carol during his attacks.

Two officers also testified regarding a domestic disturbance that occurred between Lee and Carol on February 5, 1995. Both officers testified that Carol was bleeding and had redness around her neck. A life-long friend also testified about Lee's violent attacks on Carol. Two of Carol and Lee's neighbors testified that they witnessed Lee attack Carol in Carol's front yard on one occasion. Another neighbor witnessed Lee shove Carol in September or October prior to Carol's death. The trial court ultimately excluded the admission of most of this evidence on relevancy and hearsay grounds. The trial court also noted that the prior acts of violence were too remote in time as a basis for his ruling.

At [the] conclusion of the jury trial on August 21, 2001, Bryant was convicted on all counts. Thereafter, the trial court sentenced him to sixty years for Murder, two years and three months for theft, and two years and three months on the obstruction of justice charge. Bryant was ordered to serve the sentences consecutively to each other and consecutive to the sentences that he had received in all other cases. As a result, Bryant was ordered to serve sixty-four and one-half years in this cause, plus the sentences in the other causes for a total of eighty-one and one-half years.

*Bryant v. State*, 802 N.E.2d 486, 491-93 (Ind. Ct. App. 2004).

In his direct appeal, Bryant presented the following issues for our review:

1)    whether an inculpatory statement Bryant made to his mother should have been suppressed because it was improperly obtained by officers who had eavesdropped on and recorded their conversation;

2)    whether evidence offered to establish that Bryant's father, Lee, killed Bryant's stepmother was improperly excluded;

3)    whether certain song lyrics written by Bryant that were introduced into evidence by the State should have been excluded as irrelevant and prejudicial;

4

4)      whether evidence of prior incidents during which Bryant had choked his mother and threatened her should have been excluded from evidence as irrelevant and prejudicial;

5)      whether the trial court abused its discretion in finding certain factors to be aggravating or mitigating for purposes of sentencing; and

6)      whether his sentence was inappropriate in light of the nature of the offenses and the character of the offender.

A panel of this court affirmed Bryant's convictions and sentence.

In Bryant's *pro se* petition for post-conviction relief, Bryant argued that he had received the ineffective assistance of trial counsel because counsel had not objected at every opportunity to the admission of evidence regarding the inculpatory statements he made while consulting with his mother. He further claimed that there were gaps in the chain of custody of some evidence, and that there was evidence that someone else had committed the crime. The petition was amended to add several new grounds, each alleging ineffective assistance of trial counsel, and that appellate counsel was ineffective for failing to seek rehearing or transfer on the issue that Lee's testimony did not open the door to impeachment evidence regarding his physical assaults on the victim. The petition was further amended to add a claim that trial counsel was ineffective for not discovering, prior to trial, that the victim had told another person she wished to leave Lee, but was fearful of doing so. The second, amended petition for post-conviction relief also contained the claim that Bryant was denied due process because the State suppressed evidence favorable to Bryant by failing to turn over statements of two witnesses.

A hearing was held on Bryant's petition for post-conviction relief during which his trial attorneys, Leah Fink and Michael Summers, testified. Both attorneys stated that they

5

had spent a great deal of time and effort on Bryant's case, and made numerous objections and offers of proof at Bryant's jury trial. The attorneys contended that some defense evidence was excluded by the trial court because of the unpredictable nature of trial.

Attorney Fink testified that she and her co-counsel should have raised objections to testimony from witnesses for the State regarding what they overheard of the conversation between Bryant and his mother, Kristi, and from one of the detectives, who indicated that Bryant would not talk with him once he was represented by counsel. Attorney Fink further testified that she and her co-counsel should have objected to testimony from other witnesses. She stated that the failure to make objections was not a trial strategy or tactical decision, but was a mistake.

Fink testified that oftentimes attorneys decide not to object too much in order to avoid leaving the jury with the impression that the defense has something to hide. Fink stated that she considered that strategy in Bryant's case. Further, decisions about lodging objections are split-second decisions at trial. She admitted that a jury would not look favorably upon Bryant because he drove around for several days with his stepmother's body in the trunk of the car, and because Bryant was not a likable person. She stated that she did not believe, in hindsight that the defense team did a good job of preserving the record for appeal.

Attorney Summers agreed that objections should have been made to certain testimony, but agreed with Attorney Fink that oftentimes it is not wise for the defense to object too often for fear of alienating the jury. He could not recall the reasons why objections were not made to certain testimony at trial, but stated that he had every hope of winning the case. He testified that the trial strategy was to try to show that Lee, Bryant's father, had committed the

6

murder, that the strategy was discussed with Bryant, and that the strategy was based upon what Bryant had told them.

Tracy Borden, a friend of Carol's and who was known at the time of the hearing as Tracy Beemer, testified that she did not tell Detective Bauman that Carol was afraid Bryant would kill her. She testified that she told Detective Bauman that Carol told her she wanted to leave Lee, but that she was afraid he would kill her if she did so. Borden further testified that she provided a handwritten statement to Detective Bauman in which this information was relayed to him. In addition, she testified that after she gave her voluntary statement to law enforcement, no one contacted her prior to trial, including Attorney Fink and Attorney Summer.

On August 31, 2011, the post-conviction court issued its findings of fact and conclusions thereon denying Bryant's petition for post-conviction relief.[1] Bryant now appeals.

---

[1] We commend the post-conviction court for the quality and thoroughness of its findings of fact and conclusions thereon, which greatly aided appellate review.

Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Ben–Yisrayl v. State,* 738 N.E.2d 253 (Ind. 2000), *cert. denied* (2002). Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253; *Wieland v. State,* 848 N.E.2d 679 (Ind. Ct. App. 2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben–Yisrayl v. State,* 738 N.E.2d 253.

When a petitioner appeals a denial of post-conviction relief, he appeals from a negative judgment. *Fisher v. State,* 878 N.E.2d 457 (Ind. Ct. App. 2007). The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State,* 881 N.E.2d 1018 (Ind. Ct. App. 2008). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State,* 888 N.E.2d 319 (Ind. Ct. App. 2008). We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher v. State,* 878 N.E.2d 457.

1.

Bryant argues that he received ineffective assistance of trial counsel on several substantive grounds. He claims that the trial court's conclusion that he received effective assistance of trial counsel is clearly erroneous and should be reversed.

In order to prevail on his claim that trial counsel rendered ineffective assistance, Bryant must demonstrate the existence of the two components of that claim, as established in *Strickland v. Washington,* 466 U.S. 668 (1984). *Creekmore v. State,* 853 N.E.2d 523 (Ind. Ct. App. 2006), *clarified on reh'g,* 858 N.E.2d 230. He must first establish that counsel's performance was deficient, i.e., fell below an objective standard of reasonableness and that the errors in representation were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* Counsel's performance, however, is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Ben-Yisrayl*, 729 N.E.2d at 106.

A showing of deficient performance alone is not enough, however, to prevail on a claim of ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668. The petitioner must also show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

Because a petitioner must prove both elements, the failure to prove either element defeats the claim. *See Young v. State,* 746 N.E.2d 920 (Ind. 2001) (holding that because the two elements of *Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier). We address Bryant's contentions in turn.

Bryant argues that his trial counsel was ineffective by failing to object to the testimony of Alice Alcorn and by failing to impeach her testimony. Alcorn had testified at trial that she was very good friends with Carol, that Carol had worked with her briefly, and that Bryant had come into their place of employ on occasion. During one of those visits, Bryant and Carol argued because Bryant, who was not eighteen years old, wanted Carol to buy some cigarettes for him and give him some money. Carol declined and Bryant was upset. Alcorn testified that she heard Bryant, who was noticeably still upset, say that he would pay Carol back before he was eighteen years old. Alcorn testified that on another occasion, she heard Bryant state that "he would kill that bitch" in reference to his stepmother, Carol. *Transcript* at 921.

More specifically, Bryant contends that trial counsel was ineffective for not objecting to Alcorn's testimony as prior misconduct evidence under Indiana Evidence Rule 404(b), by not moving to strike the testimony, and by failing to impeach Alcorn with her prior statements, in which she failed to mention that Bryant had threatened to kill Carol.

In order to demonstrate ineffective assistance of trial counsel based upon a failure to object, a petitioner must demonstrate that the trial court would have sustained the objection. *Glotzbach v. State*, 783 N.E.2d 1221 (Ind. Ct. App. 2003). The petitioner must also establish

the resulting prejudice from his trial counsel's failure to properly object. *Timberlake v. State*,

690 N.E.2d 243.

> Indiana Evidence Rule 404(b) provides in part:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan. . . .

In *Ross v. State*, 676 N.E.2d 339, 345-46 (Ind. 1996), the Supreme Court held that the

defendant's statements that the victim "would pay," and threats to kill the victim made two

months before her murder, were admissible under Evid. Rule 404(b) because the evidence

demonstrated the defendant's motive and intent to commit the murder, and shed light on the

relationship between the victim and that defendant.  Although decided under Evid. Rule 403

analysis, our Supreme Court, in *Berry v. State*, 704 N.E.2d 462 (Ind. 1998), held that a threat,

*viz.*, "I will kill you all and then leave," made to the eventual victims six months prior to their

murders, was properly admitted at trial and that the danger of unfair prejudice did not

outweigh the probative value of the statements.  The Supreme Court held that the evidence

was illustrative of the relationship between the defendant and the rest of his family.

Here, Alcorn's statements were relevant to show Bryant's motive and intent and his

relationship with the victim, his stepmother.  Thus, Bryant's statements were admissible and

an objection would not have been sustained.  We have previously held that "[c]ounsel is not

rendered inadequate for failing to make a futile objection." *Curtis v. State*, 905 N.E.2d 410,

418 (Ind. Ct. App. 2009).  Bryant has failed to show that had a proper objection been made,

11

the court would have had no choice but to sustain it. *See id.* (counsel cannot be faulted for failing to make an objection that had no chance of success).

In addition, Bryant claims that the evidence would not have been admissible because the State did not comply with the notice requirements of Evid. Rule 404(b). The rule provides that the State must provide reasonable notice in advance of trial, or during trial, if good cause is shown, of the general nature of the evidence it intends to introduce at trial. Evid. Rule 404(b).

During the evidentiary hearing on Bryant's petition for post-conviction relief, the only evidence presented about this statement was from Lieutenant Roy Wiseman and indicated that Alcorn had never told him that she heard Bryant threaten to kill Carol. Thus, not only was the defense unaware prior to trial that Alcorn was going to testify as she did, but the State was likewise unaware prior to trial that Alcorn would testify as she did. The post-conviction court did not erroneously conclude that Bryant failed to meet his burden of establishing this claim.

Bryant further argues that he received ineffective assistance of trial counsel because counsel did not impeach Alcorn with prior inconsistent statements. At the evidentiary hearing on Bryant's petition, Attorney Fink testified that she was surprised and shocked by Alcorn's testimony at trial that Bryant had threatened to kill his stepmother. Attorney Fink testified that she continued to pursue the defense strategy of focusing on Lee's treatment of Carol in order to support their theory that he was the perpetrator of the crime, and did so in her cross-examination of Alcorn. Fink stated that she was not certain that she would have been successful in an attempt to impeach Alcorn had she done so.

Attorney Summers testified at the hearing that he only somewhat remembered Alcorn and had no recollection of what he anticipated Alcorn's testimony at trial would be. He also stated that the focus of the defense was to portray Lee, Bryant's father, as the perpetrator. Summers did not recall why he did not attempt to impeach Alcorn and could not recall what his thoughts were at the time Alcorn gave her testimony at trial. He agreed with Attorney Fink that he was not certain that Alcorn could have been successfully impeached.

Bryant contends that he is entitled to post-conviction relief because, in addition to the testimony cited above, Attorney Fink asserted that her failure to object to or impeach Alcorn's trial testimony about Bryant's threats to kill his stepmother was a clear mistake on the part of the defense. Attorney Summers testified that had he been thinking he would have attempted to impeach Alcorn.

The defense strategy was to portray Lee as the perpetrator of Carol's murder and to focus the jury's attention on him. Thus, trial counsel advanced that tactic through their treatment of Alcorn's testimony at trial. We have previously made the observation that the choice of a defense theory is a matter of trial strategy. *Benefield v. State*, 945 N.E.2d 791 (Ind. Ct. App. 2011). On review, we give significant deference to trial counsel in the choice of a strategy, which under particular circumstances or at a particular time seems to be the best. *Id*. Our task is not to second-guess the propriety of trial counsel's tactics, even when it may be subject to criticism or proves ultimately detrimental to the defendant, so long as it is not so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Id*. "A decision to not object to evidence when the objection may be more damaging than

the evidence is within the wide range of professionally competent assistance." *Stevens v. State,* 770 N.E.2d 739, 752 (Ind. 2002).

The testimony highlighted by Bryant appears to be a hindsight evaluation by trial counsel of what occurred at trial and what could have been done differently. "Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight." *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind. 1995). Consistent with this standard of review, we find that Bryant has failed to meet his burden of establishing that the post-conviction court's decision is clearly erroneous.

Bryant asserts that he received ineffective assistance of trial counsel due to their failure to object at every opportunity to the admission of statements Bryant made to his mother during his consultation with her. In Bryant's direct appeal, we expressed our disapproval of the police officers' conduct, which involved the eavesdropping on and recording of Bryant's conversation with his mother. We concluded that the officers' conduct denied Bryant the meaningful consultation with his mother that was provided for by statute. Ind. Code Ann. §31-32-5-1 (West, Westlaw current with all 2012 legislation). Bryant could not have waived his rights because he did not have a meaningful consultation with his mother.

Because Bryant did not waive his rights, the inculpatory statements should not have been admitted at trial. We noted in our opinion on direct appeal that under harmless error analysis, however, the admission of those statements through Detective Bauman's testimony was merely cumulative of other testimony to which Bryant did not object. His mother testified to statements that were made during their conversation. Further, Officer Whelan

14

testified similarly to Detective Bauman's testimony. Thus, the statements were cumulative of other properly admitted testimony to which there was no objection made.

Attorney Fink and Attorney Summers testified during the evidentiary hearing that at times the better strategy is not to object too often. The inference some jurors might draw from frequent objections is that the defense is hiding information from the jury. Additionally, defense counsel is not ineffective for purposes of our review unless the objection would have been sustained. *Kubsch v. State*, 934 N.E.2d 1138 (Ind. 2010).

Here, the trial court had already admitted the statements via Detective Bauman's testimony. The objections that defense counsel would have made to Kristi's testimony and Officer Whelan's testimony to the same effect would have been the same. Given the trial court's previous ruling, it was reasonable for trial counsel to infer that the trial court would not have sustained further objections to similar testimony. Defense counsel is not ineffective for failing to make a futile objection. *Curtis v. State*, 905 N.E.2d 410 (Ind. Ct. App. 2009).

During the evidentiary hearing, Attorney Fink described the failure to object to the statements as a mistake. As discussed above, this assessment is merely a hindsight evaluation of trial performance. Consistent with our standard of review, we will not engage in such evaluation. *Spranger v. State,* 650 N.E.2d 1117.

Attorney Summers, on the other hand, testified that he could not state why he did not object, but admitted that there may have been a strategic reason for not objecting. He stated that he was not concerned with preserving errors for appeal, but with winning the trial. We can conclude from that testimony that his strategy was to focus on obtaining a successful result at trial, rather than to focus on preserving alleged errors for appeal. We have held that

15

it is reasonable for counsel to balance the strategic value of an action at trial against the benefit of preserving appellate error. *Santonelli v. State*, 743 N.E.2d 1281 (Ind. Ct. App. 2001).

Even had trial counsel objected to the admission of the inculpatory statements introduced through Kristi's and Officer Whelan's testimonies, there is no guarantee that this error would have resulted in the reversal of Bryant's conviction. Although the statements were inculpatory, there was significant independent evidence of Bryant's guilt, such that the alleged error amounts to harmless error. Where there is sufficient "untainted" evidence to support the conviction, we will find harmless error. *Mayfield v. State*, 402 N.E.2d 1301 (Ind. Ct. App. 1980). Here, the State presented evidence that Bryant had driven Carol's car around for several days with Carol's body wrapped in a comforter inside the trunk. He sold some of her jewelry and gave some of the jewelry to friends. DNA evidence established that a pair of jeans found inside the trunk of the car contained the victim's bodily fluids and that Bryant had worn the jeans. Other testimony established that Bryant was hostile to Carol in his actions toward her and through his rap lyrics. Bryant had been heard threatening to kill his stepmother. Bryant has failed to meet his burden of establishing the ineffective assistance of counsel.

Bryant contends that Attorney Fink was ineffective through her questioning of Bryant's parole officer, Stephanie Ringer about why Bryant began residing with Lee and Carol, rather than with Kristi, his mother. In response to the question, Ringer testified that the reason Bryant moved out was because of an incident where Bryant took Kristi's truck and drove it to another county. The State successfully argued to the trial court that the defense

16

had opened the door to questioning about additional reasons that would complete the explanation of why Bryant had left his mother's house to live with his father. Kristi testified that Bryant's behavior was out of control and that she thought that Lee could do a better job of controlling Bryant's behavior. Kristi acknowledged that she was afraid of Bryant, that he stole checks from her, and that on one occasion he had chased her with a baseball bat and choked her.

On direct appeal, Bryant challenged the trial court's decision to allow the additional evidence claiming that the trial court abused its discretion. We concluded that the trial court did not abuse its discretion because defense counsel's questioning left the jury with an incomplete and misleading impression that Bryant was sent to live with Lee because he had taken Kristi's truck without permission on one occasion. The State was properly allowed to present the jury with the complete factual situation because the defense had opened the door to the issue.

Bryant argued in his petition for post-conviction relief that Attorney Fink was ineffective for questioning Ringer along those lines, thus opening the door to the admission of the evidence of Bryant's altercation with Kristi. The post-conviction court concluded that counsel was not ineffective.

Defense counsel called Ringer as a witness for the defense because both attorneys believed that she had evidence that would be helpful to Bryant's defense. Attorney Fink testified that at the time of trial, she did not believe that she had opened the door to evidence of the physical altercation or other misconduct evidence via her questioning of Ringer. The defense strategy was to call Bryant as a witness at trial to present his account of what had

17

happened to Carol. That testimony occurred prior to Ringer's testimony. During Bryant's testimony, his prior convictions were placed before the jury, thereby making the jury aware of his bad character and his prior crimes of dishonesty. This strategy involved the calculated risk of placing Bryant's criminal history before the jury in order for Bryant to present his defense to the jury. Our Supreme Court has held that the decision to put on positive evidence at the risk of negative rebuttal evidence is an example of the kind of trial strategy that is within the province of trial counsel. *Miller v. State*, 702 N.E.2d 1053 (Ind. 1998).

Although Attorney Fink's questioning of Ringer ultimately proved not to be as helpful to the defense as hoped, and in fact opened the door to the evidence of Bryant's altercation with Kristi, the decision to have Ringer testify for the defense was a reasonable strategic decision. "Strategies are assessed based on facts known at the time and will not be second-guessed even if the strategy in hindsight did not serve the post-conviction petitioner's best interests." *Curtis v. State*, 905 N.E.2d 410, 414-15 (Ind. Ct. App. 2009). We agree with the post-conviction court's conclusion that Bryant has failed to establish ineffective assistance of counsel in this regard.

Bryant bases his next claim of ineffective assistance of trial counsel on their failure to exclude evidence of Bryant's anger, temper, and prior juvenile adjudications. That evidence was admitted through the testimony of Dennis Duke, Ringer, and Kristi. He argues that the testimony involved inadmissible evidence under Evid. Rule 404(b) and that counsel should have objected to the admission of such evidence.

Bryant claims that his counsel should have objected to the State's questioning of Duke. In particular, Bryant claims that his counsel should have objected when the State

18

questioned Duke about whether he had ever seen Bryant angry and if Bryant was mad at Carol. Quoting from *Williams v. State*, 690 N.E.2d 162 (Ind. 1997), we have held that "it is 'by no means clear that weapons possession, evidence of gun sales, and the like, are necessarily prior 'bad acts' for 404(b) purposes." *Pickens v. State*, 764 N.E.2d 295, 299 (Ind. Ct. App. 2002). Similarly, we conclude that the fact Bryant had a temper and was angry on occasion does not constitute 404(b) evidence of prior bad acts. Because the evidence was not evidence of prior bad acts, any objection made by his attorneys would not have been sustained.

Duke testified on cross-examination that he had seen Bryant on several occasions when he was "ticked off" and that Bryant had a temper. *Transcript* at 518. Duke testified that he had seen some of the damage that Bryant had caused while angry, but did not further elaborate. A fair reading of the record supports the post-conviction court's conclusion that defense counsel was attempting to characterize Bryant's occasional outbursts as blowing off of steam as opposed to a motive for killing Carol. Bryant's attorneys were attempting to show that Duke did not take Bryant's angry outbursts seriously. That strategy, although ultimately unsuccessful, was a reasonable strategy to offset the State's argument that Bryant was angry with his stepmother and finally was angry enough to kill her. Even when strategic choices are subject to criticism or the choice is detrimental to the defense, we will not find ineffective assistance of counsel where the strategy is reasonable. *Benefield v. State*, 945 N.E.2d 791.

Attorney Fink testified at the hearing that she should have objected to the testimony on relevancy grounds and had no explanation for her failure to do so. Attorney Fink did not

19

recall Duke until she was shown his testimony. Again, the defense theory was that Lee killed Carol. Fink's testimony about what should have been done at trial amounts to a hindsight evaluation. Given the strong independent evidence of Bryant's guilt, any error in the admission of the evidence would have been harmless. Bryant has failed to establish ineffective assistance of counsel in this regard.

Bryant also challenges his counsels' failure to object to a question a juror posed to Ringer. Ringer, who was Bryant's parole officer, was asked to explain the offense for which Bryant was on parole. Ringer testified that Bryant was on parole for theft, burglary, and for a weapon-in-a-dwelling offense. Bryant had already informed the jury during cross-examination that he had prior convictions for theft, check deception, and forgery. The State was attempting to show Bryant's lack of credibility. Because these were criminal convictions, counsel properly did not object because these offenses were admissible for impeachment purposes pursuant to Evid. Rule 609(a).

Although a criminal defendant's juvenile adjudications are not admissible for impeachment purposes, Bryant does not raise that claim in his appeal. *See* Evid. Rule 609(d) (juvenile adjudication generally not admissible in a criminal case). While it is true that those convictions were likely juvenile adjudications, the overall trial strategy was to portray Lee as the perpetrator. Bryant's attorneys were reasonable in their strategy to try to create the jury's trust in Bryant so they would be receptive to his version of the events. Counsel testified that it oftentimes is a better strategy to refrain from objecting too much in order to eliminate the belief that the defense has something to hide. Bryant's own testimony that he had been in Boys' School would have tipped off the jury that Bryant had juvenile adjudications. Even

20

unconventional defense strategies will not constitute ineffective assistance of counsel where the trial result was not rendered unreliable. *Potter v. State*, 684 N.E.2d 1127 (Ind. 1997).

Here again, Bryant's attorneys claimed that it was a mistake not to object to the juror question. Attorney Fink admitted that her belief was a hindsight evaluation of trial performance. Attorney Summers admitted that he did not know why he did not object, but they should have objected. Consistent with our standard of review, we will assess counsel's conduct upon facts known at the time of trial, and not through hindsight. *Villalon v. State*, 956 N.E.2d 697 (Ind. Ct. App. 2011). Bryant has failed to establish ineffective assistance of trial counsel on this basis.

Bryant argues that his trial counsel were ineffective by failing to object to his mother's testimony that Bryant had a temper and that she was scared of him. Kristi denied on direct examination that she had ever told law enforcement officers that she was scared of her son. The State then introduced her prior statement to police during their interview of Kristi and Lee to refresh her memory and impeach her trial testimony. Her prior statement showed that she had told the officers that she was scared of Bryant because she was aware of his temper.

An objection, had one been made, would have been futile. A party may impeach its own witness. Evid. Rule 607. Further, Evid. Rule 613 allows impeachment of a witness with the witness's prior inconsistent statements. *Jackson v. State*, 925 N.E.2d 369 (Ind. 2010). Because the evidence was admissible impeachment evidence, an objection would not have been sustained. "Failure to object to admissible evidence does not constitute deficient performance by counsel; rather, a defendant must show that had a proper objection been

made the court would have had no choice but to sustain it." *Curtis v. State*, 905 N.E2d 410, 418 (Ind. Ct. App. 2009).

Before Kristi testified about Bryant's temper, the jury was presented with Bryant's testimony that he was angry with his stepmother and that the relationship between the two was strained. Bryant's testimony was far more harmful to his case because it illustrated that his anger was directed at his stepmother, the victim in this case. The post-conviction court's conclusion that the failure to object was a reasonable strategy and thus, not ineffective assistance of counsel, is not clearly erroneous. The defense maintained its strategy of building the jury's trust so that it would be more receptive to Bryant's version of the events. Until Kristi's testimony was impeached, it was actually favorable to the defense and no objection was necessary.

Bryant also bases his claim of ineffective assistance of counsel on the contention that they failed to impeach portions of Lee's trial testimony. In fact, Bryant argues that there were six specific instances at trial when his counsel did not impeach Lee when they purportedly should have done so. Our Supreme Court has held that the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. *Kubsch v. State*, 934 N.E.2d 1138.

The record reveals that Bryant's counsel thoroughly cross-examined Lee. Bryant's trial counsel attempted to introduce evidence through other witnesses that would have challenged Lee's credibility, but the trial court excluded much of that evidence. Bryant's trial counsel were able to elicit testimony from Lee that Bryant would do what he told him, and this testimony supported the defense theory. Although Bryant argues six specific

instances where counsel should have attempted to impeach Lee, Bryant failed to question his counsel about those instances during the hearing on Bryant's petition. We are left without a sufficient record to determine whether Bryant's counsel chose to forego those impeachment opportunities for reasons of trial strategy.

We reiterate that "[a] strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Trial counsel thoroughly cross-examined Lee and conducted as much impeachment of his testimony as the trial court would allow. Given the presumption of adequate assistance of counsel, and Bryant's failure to present evidence to support his argument vis-à-vis the six impeachment opportunities, we are constrained to conclude that Bryant has not met his burden of demonstrating that the post-conviction court's conclusion that he received effective assistance of counsel was clearly erroneous.

Bryant asserts that he received ineffective assistance of trial counsel because of their failure to interview Tracy Beemer. He claims that because his counsel did not contact Beemer they did not learn that her statement was not accurately reported by the detective and that she had provided Detective Bauman with a handwritten copy of her statement. During the hearing on Bryant's petition for post-conviction relief Beemer testified that Carol never told her that Bryant had threatened to kill her or that she was frightened of him. She also testified that Carol told her that she was abused by her husband, was afraid of him, and wanted to leave him. She stated that Carol told her that Lee had threatened to kill her.

23

Beemer testified that after she gave her statement to Detective Bauman, no one contacted her again.

Attorney Fink testified at the hearing on Bryant's petition that she was aware of Beemer and what she had told Detective Bauman, but did not contact her. Attorney Summers testified that he did not recall if he had interviewed her. Neither one of the attorneys was questioned at the post-conviction hearing about why they did not contact her. Given the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, Bryant's claim fails because we cannot determine if the failure to contact Beemer was a matter of trial strategy. *See Timberlake v. State*, 753 N.E.2d 591.

We acknowledge that effective representation requires adequate pretrial investigation and preparation. *Badelle v. State*, 754 N.E.2d 510 (Ind. Ct. App. 2001). That said, it is well established that on review, we should not judge an attorney's performance with the benefit of hindsight. *Hernandez v. State*, 638 N.E.2d 460 (Ind. Ct. App. 1994). "When deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments." *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002).

The information from Detective Bauman's report indicated that Beemer would not provide evidence that was favorable to Bryant's defense. Trial counsels' decision not to further investigate a witness who would offer unfavorable evidence appears reasonable. The fact that it was later learned that she could have provided some evidence that would have been favorable to the defense does not render their representation ineffective. Based upon

24

the information available to trial counsel at the time they were preparing for trial, their performance was reasonable.

Additionally, Bryant has failed to establish prejudice from the trial counsels' decision. Beemer would not have been allowed to testify about what Carol had told her. Such would have constituted inadmissible hearsay. "Hearsay is evidence of a statement made out of court that is offered in a judicial proceeding to prove the truth of a fact asserted in the statement." *Craig v. State*, 630 N.E.2d 207, 209 (Ind. 1994) (citing Evid. Rule 801(c)).

At the post-conviction hearing Beemer testified to what Carol told her and her testimony was offered for the truth of those statements. On appeal, Bryant argues that the statements would have been admissible under Evid. Rule 803(3). "Rule 803(3) creates a hearsay exception for statements of the declarant's then-existing state of mind at the time the statement was made." *Camm v. State*, 908 N.E.2d 215, 226 (Ind. 2009). The term "state of mind" may include emotion, sensation, physical condition, intent, plan, motive, design, mental feeling, pain, and bodily health. Evid. Rule 803(3). While a victim's state of mind is relevant where it has been put at issue by the defendant, such was not the case here. *See Vehorn v. State*, 717 N.E.2d 869 (Ind. 1999) (defendant had put victim's state of mind at issue).

"If statements are admitted to show the declarant's state of mind, and not to prove the substantive content of those statements, they do not run afoul of the hearsay rule because, by definition, those statements are not 'hearsay' pursuant to Evidence Rule 802." *Vehorn v. State*, 717 N.E.2d 869, 873-74 (Ind. 1999). In *Ford v. State*, 704 N.E.2d 457 (Ind. 1998), the victim's statement to a witness expressing her unhappiness, that she wanted to leave, but was

25

afraid that if she left again her husband would kill her, was admissible under the exception because that defendant had placed the victim's state of mind at issue.

Here, the defense theory was that Lee had committed the murder. Carol's state of mind was not placed at issue. Further, we previously determined in Bryant's direct appeal that Carol's state of mind was not placed in issue by the defense. *Bryant v. State*, 802 N.E.2d 486. Attorneys who fail to call a witness who would have testified about statements that were inadmissible are not ineffective. *See Johnson v. State*, 832 N.E.2d 985 (Ind. Ct. App. 2005) (trial counsel not ineffective for failing to call a witness to testify as to inadmissible statements), *trans. denied*. Bryant's attorneys were not ineffective.

In sum, we conclude that Bryant has failed to establish he received the ineffective assistance of trial counsel. Bryant has also failed to establish that the post-conviction court's decision was clearly erroneous.

2.

Bryant contends that the post-conviction court erred by denying his claim of newly discovered evidence. In particular, Bryant contends that he is entitled to a new trial because the State failed to disclose to the defense the handwritten statement given by Beemer to Detective Bauman. Bryant claims that the State failed to turn over this exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

We have recently stated the following:

> Newly-discovered evidence mandates a new trial only when the defendant demonstrates each of the following nine requirements:
> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time

26

for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. The reviewing court analyzes these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized. The burden of showing all nine requirements rests with the post-conviction petitioner.

*Bunch v. State*, 964 N.E.2d 274, 283 (Ind. Ct. App. 2012), *trans. denied* (internal quotations and citations omitted). "The burden of showing that *all* nine requirements are met rests with the petitioner for post-conviction relief." *Whedon v. State*, 900 N.E.2d 498, 504 (Ind. Ct. App. 2009) (emphasis in original).

In order to prevail on his *Brady* claim, Bryant must have established: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Bunch v. State*, 964 N.E.2d 274. For purposes of a *Brady* claim, evidence is material only where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Id*. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). We will not conclude that the State has suppressed material evidence where it was available to the defendant through the exercise of reasonable diligence. *Conner v. State*, 711 N.E.2d 1238 (Ind. 1999). "Suppression of *Brady* evidence is constitutional error warranting a new trial." *Bunch v. State*, 964 N.E.2d 274, 298 (Ind. Ct. App. 2012), *trans. denied*. Claims of newly discovered evidence or *Brady* violations fail, however, where the evidence establishes that the defense failed to exercise due diligence to discover the evidence before the trial. *Denney v. State*, 695 N.E.2d 90 (Ind. 1998).

In the present case, both of Bryant's trial counsel knew about Beemer and what Detective Bauman's report reflected that she told him. Neither attorney contacted Beemer prior to trial to discover directly from her what Carol had told her. Given her testimony at the hearing on Bryant's petition, had they contacted her, they would have discovered that her version differed from that given by Detective Bauman. They also would have discovered that she had given him a handwritten statement. Bryant's *Brady* violation and newly discovered evidence claims therefore fail. "The State does not have a duty to disclose evidence that the defendant knew or should have known existed." *Denney v. State*, 695 N.E.2d at 95.

Additionally, Bryant has failed to establish that the allegedly suppressed evidence was material. Evidence is material only where there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Bunch v. State*, 964 N.E.2d 274. A reasonable probability is one that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Minnick v. State*, 698 N.E.2d 745 (Ind. 1998).

We decided in the first issue that Beemer's testimony would have been inadmissible because it was hearsay offered for the truth of the statements where Carol's state of mind had not been placed at issue. Had the state disclosed the evidence to the defense, it could not have led to a different result at trial.

Bryant has failed to establish that the post-conviction court's conclusion that Bryant's *Brady* violation and newly discovered evidence claims failed is clearly erroneous. The post-conviction court did not err.

28

3.

Bryant contends that the cumulative effect of his ineffective assistance of trial counsel claims, and his newly discovered evidence and *Brady* violation claims entitles him to a new trial.

"Errors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." *Pennycuff v. State*, 745 N.E.2d 804, 816-17 (Ind. 2001). "A conviction based upon an accumulation of defense attorney errors, when counsel's mistakes do substantial damage to the defense, must be reversed." *French v. State*, 778 N.E.2d 816, 826 (Ind. 2002). In this case, the *Brady* claim fails because even if his counsel had exercised diligence in discovering Beemer's handwritten statement prior to trial, her testimony about Carol's statements to her would have amounted to inadmissible hearsay.

Furthermore, we have addressed each of the bases for Bryant's claims of ineffective assistance of counsel and have concluded that the post-conviction court's denial of post-conviction relief was not clearly erroneous. "Alleged errors which do not present a single basis for reversal do not gain the stature of reversible error when viewed *en masse.*" *Lucas v. State*, 499 N.E.2d 1090, 1098 (Ind. 1986). As discussed above, although some of trial counsel's strategies and tactics ultimately were not successful in Bryant's defense, we review the representation based upon what was known at the time rather than upon hindsight. Having found that Bryant has established none of the individual claims of ineffective assistance, we decline to find there is cumulative error requiring reversal. The post-conviction court's judgment is not clearly erroneous.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.